CHARLES C. WHITE, TREASURER, AND THE COUNTY COMMISSIONERS OF LANCASTER COUNTY, PLAINTIFFS IN ERROR, v. THE BURLINGTON AND MISSOURI RIVER RAILROAD COMPANY, DEFENDANT IN ERROR.

1. **Government Grant of Lands to Railroad.** Under section 20, of the act of Congress, approved July 2, 1864, providing that when "the Burlington and Missouri River Railroad Company shall have completed twenty consecutive miles of its road, the President of the United States shall appoint three commissioners to examine and report to him in relation thereto, and if it shall appear to him that twenty miles of said road have been completed as required by law, then, upon certificates of said commissioners to that effect, patents shall issue conveying the right and title to said lands to said company," etc.: *Held*, that until such certificate was issued the company did not become the equitable owner of such lands.

2. ——: TAXATION OF RAILROAD LANDS. The question of the taxation of lands, where there is no exemption in the grant, is governed by the laws of the state.

ERROR from the district court of Lancaster county.

The action was brought by the defendant in error, who was plaintiff in the district court, to enjoin the

plaintiffs in error from collecting taxes levied for the year 1871, upon certain lands situated in Lancaster county. A general demurrer was filed by each of the defendants below to the petition, which demurrers were overruled by the court, and judgment rendered permanently enjoining the collection of said taxes. They thereupon brought the cause here upon petition in error.

*Brown, England & Brown*, for plaintiffs in error, cited *Hunnewell v. Cass County*, 22 Wall., 464. *Gwynne v. Niswanger*, 15 Ohio, 367. *People v. Cohen*, 31 Cal., 210. *Astrom v. Hammond*, 3 McLean, 107. *Carrol v. Perry*, 4 Id. 25. Blackwell on Tax Titles, 411. Cooley on Taxation, 6. *Atwater v. Schenck*, 9 Wis., 160. *Witherspoon v. Duncan*, 4 Wall., 210. *Carroll v. Safford*, 3 How., 441. *People v. Shearer*, 30 Cal., 645.

*T. M. Marquett*, for defendant in error, cited *Clark v. Norton*, 49 N. Y., 243. *Mygatt v. Washburn*, 15 N. Y., 316. *Clark v. Norton*, 49 N. Y., 247. *People v. Sups. of Chenango*, 11 N. Y., 563. *Freeman v. Kenney*, 15 Pick., 44. *Lyman v. Fiske*, 17 Pick., 231. *Des Moines v. The County of Polk*, 10 Iowa, 1. *Fisher v. State*, 16 Ill., 394. Cooley on Taxation, 260. *People v. Kohl*, 40 Cal., 127. *Long v. Culp*, 14 Kan., 412. *McShane v. U. P. R. R.*, 22 Wall., 444. *Cedar Rapids & Mo. River R. R. Co. v. Woodbury*, 29 Iowa, 247. *Westfall v. Preston*, 49 N. Y., 354. *Des Moines Navigation and R. R. Co. v. Polk County*, 10 Iowa, 1.

MAXWELL, J.

The petition alleges that the third twenty miles of the Burlington and Missouri River Railroad in Nebraska, commencing in section twelve, township number eleven, north, range eight, east of the sixth principal meridian, and ending in section seven, township nine, north, range

six, east, was completed on the 22d day of April, 1871. It is also alleged that the assessors of the different precincts in Lancaster county, on or about the 20th day of March, 1871, put down upon their lists among other lands in said county the lands in question, for the purpose of taxation.

Section 20, of the act of Congress, approved July 2, 1864, provides: "That whenever said Burlington and Missouri River Railroad Company shall have completed twenty consecutive miles of the road mentioned in the foregoing section, in the manner provided for other roads mentioned in this act, and the act to which this is an amendment, the President of the United States shall appoint three commissioners to examine and report to him in relation thereto, and if it shall appear to him that twenty miles of said road have been completed as required by this act, then, upon certificate of said commissioners to that effect, patents shall issue conveying the right and title to said lands to said company, on each side of said road as far as the same is completed, to the amount aforesaid; and such examination, report and conveyance, by patents, shall continue from time to time, in like manner, until said road shall have been completed." Commissioners were duly appointed by the President in July, 1871, who, on the 20th day of November, 1871, made their report to the President, properly certified, that eighty miles of said road, commencing at Plattsmouth, thence west, had been built and equipped as required by law.

Is such a certificate a condition precedent to the right of the company to the lands in question? We think it is. The law required the road to be constructed in the manner prescribed, and to be a first class road in all respects. The certificate, therefore, was the evidence by which it was determined that the company had complied with the law in the construction of their road, and the

company then were entitled to their· lands on the payment of the necessary costs.

It ·is urged, however, that the lands are not taxable until the costs of selecting, surveying and conveying are paid by the plaintiff. Section twenty-one of the act provides, " that before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the costs of surveying, selecting and conveying the same by the said company, or party in interest, as the titles shall be required by the said company, which amount shall, without any further appropriation, stand to the credit of the proper account, to be used by the Commissioner of the General Land Office for the prosecution of the surveys of the public lands along the line of said road, and so from year to year until the whole shall be completed as provided under the provisions of this act."

In *Railway Co. v. McShane*, 22 Wallace, 462, the supreme court of the United States, in construing a similar provision in the act creating the Union Pacific Railroad Company, say: "But the proposition that the state cannot tax these lands while the cost of surveying them is unpaid, and the United States retains the legal title, stands upon a different ground.

The act of 1864, section twenty-one, declares, that before any of the lands granted by this act shall be conveyed to the company, there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same.

That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government, can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done, without which the company is not

entitled to a patent. The case, clearly, is not within the rule which authorizes state taxation of lands the title of which is in the United States.

The reason of this rule is also fully applicable to this case. The United States retains the legal title by withholding the patent, for the purpose of securing the payment of these expenses, and it cannot be permitted to the states to defeat or embarrass this right by a sale of the lands for taxes. If such a sale could be made, it must be valid if the land is subject to taxation, and the title would pass to the purchaser. If no such title could pass, then it is because the land is not liable to the tax; and the treasurers of the counties have no right to assess it for that purpose. But when the United States parts with her title, she has parted with the only means which that section of the statute gives for securing the payment of these costs.

It is by retaining the title that the payment of the costs of survey is to be enforced. And so far as the right of the state to tax the lands is concerned, we are of opinion that when the original grant has been perfected by the issue of the patent, the right of the state to tax, like the right of the company to sell the lands, has become perfect."

As there is no condition attached to the grant of these lands by which they are exempted in any manner from taxation, *that* question must be determined by the revenue law of this state. Section one, General Statutes, 896, provides for certain exemptions, among which "the property of the United States and this state, including school lands," are included. Section two provides, "*that all other property*, real and personal, within this state, is subject to taxation in the manner herein directed; and this section is intended to embrace lands and lots in towns, including lands bought from or donated by the United States, and from this state, and whether bought

on credit or otherwise." This court, in construing this section, in *Hagenbuck v. Reed*, 3 Neb., 23, say: "Now, to us it seems quite clear that the plaintiff's land is included in this description of property subject to taxation. It had been the property of the state, but at the time the taxes were levied it had been *bought on credit* by the plaintiff, who thereby became the owner, not of the fee, to be sure, but, nevertheless, the owner in the same sense that he would have been had his purchase been made from a private person on like terms." We see no reason why this rule should not be applied to lands granted to a railway company, like the case at bar. When the road is accepted, the company becomes the equitable owner of the lands donated.

Although the costs of surveying, selecting and conveying must be paid before the United States can be required to part with the legal title, yet it is evident that the United States have a mere special interest in these lands in the nature of a lien for the amount of fees that may be due, and cannot be regarded as the owner. These lands are not open to entry nor settlement under the homestead or pre-emption laws, and cannot be disposed of so as to defeat the grant to the company. To all intents, the railway company is the owner, and cannot be permitted to assert its own neglect of duty to defeat the obligation resting upon it to bear its share of the public burdens.

It is unnecessary to review the case further. The plaintiff in the court below was not the owner of the equitable title to the lands in controversy at the time the taxes in question were levied. The lands, therefore, were not liable to taxation. The judgment of the district court must be affirmed.

JUDGMENT AFFIRMED.