WARRICK PRICE, PLAINTIFF IN ERROR, v. LANCASTER COUNTY, DEFENDANT IN ERROR.

Taxes: LAND GRANT TO RAILROAD. · Certain land in an odd-numbered section within the limits of the B. & M. railroad grant was claimed by that corporation, and also adversely by various parties under the homestead and pre-emption laws. In 1877 the land was assessed and taxes levied thereon, and the land sold to one P., who paid the taxes on said land for 1878 and 1879. Afterwards the county treasurer made an entry on his record of sale that said land was not subject to taxation. P. thereupon brought an action against the county to recover the amount paid, with interest; *Held*, That the corporation having earned the land by the completion and acceptance of the road, was the equitable owner of said land, and that the same was taxable notwithstanding the failure of said company to pay the fees for the entry of the same.

ERROR to the district court for Lancaster county. Heard below before POUND, J.

*Groff, Montgomery & Jeffrey,* for plaintiff in error.

*W. J. Lamb* and *Ricketts & Wilson,* for defendant in error.

MAXWELL, CH. J.

The plaintiff filed a claim with the county commissioners of Lancaster county for certain taxes paid by him upon

land which he alleges was not subject to taxation.   The commissioners rejected the claim.   The plaintiff then appealed to the district court, where the order of the commissioners rejecting the claim was affirmed.

The causes of action, as stated by the plaintiff in the district court, are as follows:   That "On February 10th, 1879, the said plaintiff at private tax sale at the treasurer's office of and in the said county of Lancaster, Nebraska, purchased the south-east quarter of section five, in township eleven, of range seven east, situated in said Lancaster county, Nebraska, for the sum of $28.45, that being the amount of taxes, costs, and charges, levied and charged against said land for the year 1877, and which were unpaid and delinquent and for which said land had been advertised for sale; said plaintiff paid said sum to the treasurer of said Lancaster county, who issued and delivered to the said plaintiff a certificate of said sale.   Of said sum of $28.45 the sum of $22.45 was paid on account of taxes, costs, and charges claimed to be due the said county, and said sum of $22.45 was afterwards accounted for by the said treasurer and by him paid into the treasury of said county.

"On June 20th, 1879, the said plaintiff paid to the treasurer of said county the sum of $20.92, levied and charged against said land and claimed due on account of the taxes of 1878, and the said treasurer issued and delivered to the plaintiff a tax receipt therefor.   Of said sum of $20.92, the sum of $14.68 was paid on account of taxes claimed to be due the said county, and said sum of $14.68 was afterwards paid and accounted for to the treasury of said county by the said treasurer.

"On July 30th, 1880, the plaintiff paid to the treasurer of said county the sum of $17.50, levied and charged against said land on account of the taxes of 1879, and the said treasurer issued and delivered to the said plaintiff a tax receipt therefor.   Of said sum, the said treasurer after-

wards paid and accounted to the treasury of said county for the sum of $12.26, which amount had been paid by the plaintiff on account of taxes due said county for said year.

"On the 27th day of September, 1881, on delivery to the treasurer of said county of the above mentioned tax certificate of sale by the plaintiff, the said treasurer made, executed, acknowledged and delivered to the plaintiff a tax deed of said land, which deed was afterwards recorded in office of clerk of said county.

"The plaintiff further alleges that during the said years of 1877, 1878 and 1879, the said land was not subject to taxation, and the said land was assessed for taxation in said years by mistake of the assessor of said county, and there was no tax really due on said land at the time of said sale and said payments; that said land was, during said years the property of the United States of America, and had never been patented or otherwise conveyed by the said United States of America to any person; by reason of said facts said sale was illegal and void, and the plaintiff received no consideration for the payments above set forth.

"On the 15th day of December, 1882, the plaintiff returned the said tax deed to the treasurer of said county for cancellation, and said treasurer cancelled said deed and made an entry opposite said tract of land on the record of sale, that the same was erroneously sold.

"On December 15th, 1882, the plaintiff made a sworn statement or account of said payments, and of his claim against said county arising by reason of the foregoing facts, and filed the same with the clerk of said county in his office, for presentation to and action thereon by the board of county commissioners," which board rejected the claim, etc.

The county, in its answer, denies the facts stated in the petition, and alleges that the land in controversy, in the years 1877, 1878, and 1879, was within the twenty-mile

limit of the grant to the Burlington and Missouri River railroad, and was withdrawn from market on the 20th of February, 1866, and at the dates aforesaid was the property of said railroad company.

The evidence in the case consists of the following letter:

" DEPARTMENT OF THE INTERIOR,
" GENERAL LAND OFFICE,
"WASHINGTON, D. C., April 5th, 1882.

"*Messrs. Groff & Montgomery, Omaha, Nebraska:*

" GENTLEMEN :—In reply to your letter of the 7th of February last, you are informed that the status of the S. E. ¼ Sec. 5, T. 11 N., R. 7 E., Nebraska (the land in controversy), as shown by the records of this office, is as follows :

" Said tract is within the twenty-mile limits of the grant of July 2, 1864 (13 Stats., p. 364), to aid in the construction of the Burlington and Missouri River railroad, the right of which attached by definite location June 15, 1865.

" The withdrawal of the odd numbered sections for said grant was ordered February 3, 1866, and became effective by receipt of the order at the local office on the 20th of the same month.

" Edwin Galvin filed pre-emption declaratory statement No. 573 for said tract July 27, 1865, alleging settlement on the 28th of June preceding, but failed to follow this with proof and payment as required by law.

" June 17, 1871, Charles F. Echols made homestead entry No. 8,378, on the S. ½ of S. E. ¼, and his entry was cancelled January 22, 1873, for relinquishment.

" Hiram Echols filed pre-emption declaratory statement No. 7,976, for N. ½ of S. E. ¼, June 19, 1871, alleging settlement two days prior, but afterwards relinquished the same.

" R. B. Echols made homestead entry No. 8,462, June 27,

1871, on the N. ½ of S. E. ¼, which entry was cancelled January 27, 1873, for relinquishment.

" February 17th, 1873, George W. Flora made homestead entry No. 12,441, on the entire S. E. ¼. Under date of Nov. 12th, 1874, this office decided that Galvin's filing, even if valid, did not defeat the right of the company, as settlement was not made until the right of the road attached. Flora's entry was held for cancellation subject to appeal, and the land awarded to the company. This decision was affirmed by the Secretary of the Interior, on appeal, June 4th, 1875.

" This office, by letter of June 9th, 1875, advised the local officers of the decision of the department, and informed them that Flora's entry would be suspended from cancellation until receipt of information whether the company would relinquish its claim in his favor and take other land under act of June 22d, 1874. They were directed to address the officers of the company, requesting such relinquishment, and to advise this office of their reply. Under date of June 28, 1875, the receiver forwarded a letter from the land commissioner of the company, dated June 24, 1875, in reply to their request for a relinquishment in favor of Flora, stating that under the circumstances he was without authority to make such relinquishment. By letter of July 8, 1875, referring to the foregoing, the local officers were informed that said homestead entry had that day been cancelled on the records and files of this office, and they were directed to make the proper notes on their records and advise the parties in interest.

" July 12, 1875, Mr. Flora tendered final proof under the homestead laws, claiming the benefit of military service under the act of June 8, 1872 (Sec. 2,205, Rev. Stats. U. S). His proof was not allowed by the register, because of the claim of the railroad company. This action was approved by office latter " C," dated Aug. 4, 1875.

" Under date of Dec. 4, 1877, the register transmitted the

petition of said homestead claimant for the issue of patent on his entry, claiming that he was entitled to the relief provided by the act of April 21st, 1876.

" February 5, 1878, this office allowed the railroad company thirty days in which to file objections to the application for reinstatement of said entry and the issue of patent, and so advised the local officers and the attorneys of the parties.

" With letter of March 13, 1878, the attorney for the company filed in this office the affidavit of Edmond Galvin, dated Feb. 23, 1878, setting forth that he is the person who filed declaratory statement No. 573 for the tract in question; that his filing was a mistake, it being his intention to file for the S. E. ¼ Sec. 5, T. 10 N., R. 7 E.; and that he never made any settlement or improvement whatever upon the tract in controversey. Under date of March 30th, 1878, this office held that there was no valid subsisting claim to said tract at the date of the withdrawal for the benefit of the railroad company, consequently Flora's homestead entry was not confirmed by the act of 1876, and his application for reinstatement of the same was rejected subject to appeal within sixty days.

" June 5, 1878, he filed in the local office an application for further time to furnish proof of the good faith of Galvin's pre-emption filing. This application was forwarded with the register's letter of the 11th of the same month. It was denied by this office March 5, 1879, but the applicant was allowed a reasonable time for appeal from the decision of March 30th, 1878. May 20, 1879, the receiver reported that Flora had been duly notified of this decision but had taken no action in the matter.

" By letter of May 31, 1879, the local officers were advised that the decision of March 30, 1878, was declared final, and said homestead would remain cancelled on the records of this office, and that the case was closed.

" I find no record of any further action by either of the parties in this case.

"The company has not formally selected the tract in question, and consequently no patent has issued therefor.

"Very respectfully,

"N. C. McFARLAND,

"Commissioner."

The only ground upon which it seems to be claimed that the lands are exempt from taxation is, that the railroad company had not paid the fees for entering said land, hence the right to a patent was not complete until said fees were paid. We cannot give our assent to this proposition.

Section 20, of the act making the grant, provides "that whenever said Burlington and Missouri River Railroad Company shall have completed twenty consecutive miles of the road mentioned in the foregoing section in the manner provided for other roads mentioned in this act, and the act to which this is an amendment, the President of the United States shall appoint three commissioners to examine and report to him in relation thereto; and if it shall appear to him that twenty miles of said road have been completed, as required by this act, then, upon certificate of said commissioners to that effect, patents shall issue conveying the right and title to said lands to said company on each side of said roads, as far as the same is completed, to the amount aforesaid; and such examination, report, and conveyance by patents, shall continue from time to time in like manner until said road shall have been completed," etc.

It will be seen that the grant is absolute, patents to be issued upon the certificates of the commissioners as each twenty miles of road was completed. The company earned the land by the construction of the road, and, upon the acceptance of each twenty miles, became the equitable owners of the odd numbered sections not otherwise appropriated when the line was definitely fixed, within twenty miles on each side of the road. When the road was constructed and accepted the company became the equitable

owner of the land in question, and such ownership being property within the state, was subject to our revenue law, and was taxable. *White v. B. & M. R. R. Co.*, 5 Neb., 393. In the case cited, it was held that where there was no exemption in the grant, the question of the taxation of such lands was governed by the laws of the state. That we regard as a correct statement of the law, and it is adhered to. It is probable that the cause of failure of the company to pay the fees for entering the land in question was the adverse claim of others; but this would not under the facts agreed upon in this case, exempt the land from taxation.

By what authority the treasurer sought to cancel the tax deed does not appear, nor is it material to inquire, as the lands were clearly subject to taxation. The county treasurer can perform no judicial duties in the premises. It is only when in fact lands which have been assessed, were not subject to taxation, or legally assessed on which taxes have been paid, that the treasurer can make any entry as provided in section 133 of chapter 77 of the Compiled Statutes, that the land was erroneously sold. If the land was in fact taxable, such entry will not preclude the county from recovering the taxes due upon the land. The power of determining the validity of a tax actually levied is a proper subject for the courts—the question is one of law, and not of fact. Where, however, taxes have been paid upon land, and it is afterwards by mistake sold for the same taxes, there being no authority to sell in such case, and the question being one of fact, the treasurer no doubt may make the entry required. It is apparent that the land in question was taxable at the time it was assessed, and that the plaintiff is not therefore entitled to recover the amount of such taxes from the county. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.