CHARLES GRAFF, APPELLANT, V. CHRISTIAN ACKERMAN, COUNTY TREASURER, APPELLEE.

FILED JANUARY 4, 1894.  NO. 6555.

1. **Taxation of Land Purchased from Government Before Issuance of Patent.** When land has been fully earned or paid for, so that the clerical act of issuing the patent only is required in order to invest the purchaser or donee with the full legal title thereto, the jurisdiction of the state attaches, and it is taxable like other property; but where the conditions of the purchase or donation have not been performed, and the general government continues to have such a beneficial interest therein as will justify it in withholding a patent, it is not taxable by the agencies of the state.

2. The case of *Edgington v. Cook*, 32 Neb., 551, overruled.

APPEAL from the district court of Cuming county. Heard below before NORRIS, J.

The opinion contains a statement of the case.

*George D. Meiklejohn* and *George G. Bowman*, for appellant:

The land in controversy is not subject to taxation by the state while the legal title thereto is in the United States

and held to secure unpaid purchase money not yet due. (*Van Brocklin v. Tennessee,* 117 U. S., 151; *Wisconsin C. R. Co. v. Price County,* 133 U. S., 496; *Kansas P. R. Co. v. Prescott,* 16 Wall. [U. S.], 603; *Union P. R. Co., v. McShane,* 22 Wall. [U. S.], 444; *White v. Burlington & M. R. R. Co.,* 5 Neb., 393; *Donovan v. Kloke,* 6 Neb., 124.)

*George H. Hastings, Attorney General,* and *P. M. Moodie, contra,* cited: *Edgington v. Cook,* 32 Neb., 551.

POST, J.

This was an action by the appellant in the district court of Cuming county against the appellee as county treasurer to restrain the sale by the latter of the southwest quarter of section 17, town 24, range 7 east, in said county, for taxes assessed in the years 1892 and 1893. A demurrer was sustained to the petition, and judgment entered dismissing the action, whereupon an appeal was taken by the plaintiff to this court.

It appears from the petition that the property above described is a part of the territory recently included within the Omaha Indian reservation; that in pursuance of an act of congress approved August 7, 1882, a part of said reservation, including the tract above described, was surveyed, appraised, and offered for sale to actual settlers on the following terms, to-wit: one-third of the appraised price one year from the date of entry, one-third in two years thereafter, and one-third in three years thereafter, with interest at the rate of five per cent per annum. By said act it is provided that "in case of default in either of said payments, the person thus defaulting for a period of sixty days shall forfeit absolutely his right to the tract which he has purchased and any payment or payments he may have made." It is further provided that "when purchasers shall have complied with the provisions of this act as to

50

payment, improvement, etc., proof thereof shall be received
by the local land office at Neligh and patents issued as in
case of public lands offered under the homestead and pre-
emption acts." In the month of June, 1884, the plaintiff
settled upon the premises described and made valuable and
lasting improvements thereon; and in the month of July of
said year, having fully complied with the conditions im-
posed by said act, he purchased said property from the
United States on the terms above named, and has since
said last named date continued to reside on and cultivate
the same. In the years 1885, 1886, 1888, and 1890, con-
gress, by supplemental acts, extended the time for the pay-
ment of the purchase price of said land, so that the first
payment therefor will become due on the 1st day of De-
cember, 1894, and the balance in equal installments one
and two years thereafter. By each of said supplemental
acts the interest on the principal sum was required to be
paid annually, and the plaintiff has paid in full all interest
chargeable to him under the provisions of the several acts;
but the principal sum is not due, and is wholly unpaid.

It is obvious from the foregoing statement that the title
to the property above described was, at the time of the
levy of the taxes in controversy, in the United States, and
that the plaintiff has at most an equitable interest therein.
It is true that the payment in full of the purchase price
will invest him with the entire equitable title to the prem-
ises; but at present he is in effect a tenant in possession un-
der a contract of purchase in which time is made the es-
sence of the contract. His title, whether equitable or legal,
depends upon the payment for the land, and until the per-
formance of that condition the title remains in the United
States. The settled rule in the state and federal courts is
that where land has been fully earned or paid for, so that
the clerical act of issuing the patent only is required in
order to invest the purchaser or donee with the full legal
title thereto, the jurisdiction of the state attaches and it is

taxable like other property; but where the conditions of the donation or purchase have not been complied with, and the general government continues to have such a beneficial interest therein as will justify it in withholding a patent, it is not taxable by the state. (See *Union P. R. Co. v. McShane*, 22 Wall. [U. S.], 444; *Van Brocklin v. Tennessee*, 117 U. S., 151; *Wisconsin C. R. Co. v. Price County*, 133 U. S., 496; *White v. Burlington & M. R. R. Co.*, 5 Neb., 393; *Donovan v. Kloke*, 6 Neb., 124.) In *Union P. R. Co. v. McShane* Justice Miller uses the following language:

"That the payment of these costs of surveying the land is a condition precedent to the right to receive the title from the government, can admit of no doubt. Until this is done, the equitable title of the company is incomplete. There remains a payment to be made to perfect it. There is something to be done without which the company is not entitled to a patent. The case clearly is not within the rule which authorizes state taxation of lands, the title of which is in the United States.

"The reason of this rule is also fully applicable to this case. The United States retains the legal title by withholding the patent for the purpose of securing the payment of these expenses, and it cannot be permitted to the states to defeat or embarrass this right by a sale of the lands for taxes. If such a sale could be made, it must be valid if the land is subject to taxation and the title would pass to the purchaser. If no such title could pass, then it is because the land is not liable to the tax; and the treasurers of the counties have no right to assess it for that purpose."

In concluding the learned judge says: "Under these views we are of opinion that the state had no right to tax the lands for which the cost of surveying had not been paid, and for which no patent had been issued."

We feel under especial obligation to recognize the rule thus stated, for the reason that the people of Nebraska, at

the time of its admission into the Union as a state, entered into a solemn compact with the general government by which it is provided that "no taxes shall be imposed by said state on lands or property therein belonging to, or which may hereafter be purchased by, the United States." (See Enabling Act, sec. 4.)

The only obstacle we have encountered in holding the property described to be exempt from taxation by the agencies of the state is the case of *Edgington v. Cook*, 32 Neb., 551. That was an original action to restrain the collection of taxes assessed against lands in Nance county within the limits of the former Pawnee Indian reservation. It appears that the terms of sale were substantially the same as those enumerated in the petition in this case; that the plaintiff therein had made payment of but one of the three equal installments of the purchase price, and was not at the time of the levy of the taxes in controversy entitled to a patent, the title being in the United States. It was held that the lands were taxable from the date of their purchase. It is conceded that that case is directly in point, and, if it is to be regarded as authority, is decisive of the present controversy. But in determining its value as a precedent it should be observed, first, that the court therein appear to have overlooked the case of *Donovan v. Kloke, supra*, in which it is expressly held that lands purchased from the United States at private entry are not taxable until after payment in full of the purchase money, and that every step before that time taken by way of assessment or levy of taxes is void; second, the decision therein rests upon the authority of *Hagenbuck v. Reed*, 3 Neb., 17, which involved no question of the power to tax property belonging to the United States, but the right of the state to tax its own school lands held by individuals under contracts of purchase; and, third, the force of *Hagenbuck v. Reed* as authority is greatly impaired, if indeed it is not overruled, by subsequent decisions of this court. (See

*Washington County v. Fletcher*, 12 Neb., 356.)   The last named case recalls the controversy, as serious as amusing, between the court and the legislature, which grew out of the decision in *Hagenbuck v. Reed.*  · It was contended by the legislature that school lands which had been sold by the state on credit were not taxable until fully paid for, notwithstanding the holding of this court to the contrary; and by an act approved February 20, 1879, under a preamble stating that said lands "have not been and are not now taxable for any purpose whatever," provision was made for the refunding to purchasers of all money paid as taxes thereon.   That act was upheld in *Washington County v. Fletcher*, apparently upon the ground that it was a legislative construction of prior acts inconsistent with *Hagenbuck v. Reed.*   While the question of the soundness of the conclusion in the last named case is not now before us, that case is clearly not authority for the proposition asserted by the appellee in this.   Since we concur without hesitation in holding that the lands in this case were not taxable at the time in question, it follows that the case of *Edgington v. Cook* cannot longer be accepted as authority.   The judgment of the district court is reversed and the case remanded with instructions to enter a decree in accordance with the views herein expressed.·

REVERSED.