STATE, Respondent, v. LEWIS AND CLARK COUNTY ET AL., Appellants.

(No. 6,406.)

(Submitted February 11, 1929. Decided February 18, 1929.)

[274 Pac. 854.]

*Mr. George Padbury* and *Mr. A. P. Heywood,* for Appellants, submitted a brief.

*Mr. L. A. Foot,* Attorney General, and *Mr. James W. Scott,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

It appears that Harry Z. Berry, on May 20, 1920, executed to the state a mortgage upon lands in Lewis and Clark county to secure the payment of a promissory note of that date. Presumably note and mortgage were the evidence of a loan of permanent common school funds made to Berry pursuant to Chapter 124, Session Laws of 1917, p. 201. (Rev. Codes 1921, secs. 1928 et seq.; Chap. 6, Session Laws 1923, p. 19.) On May 20, 1925, Berry, being unable to pay the amount due upon the note, and the state having the right to foreclose the mortgage, conveyed the mortgaged property to the state by quitclaim deed. On August 7, 1926, Berry, pursuant to the provisions of section 1938, Rev. Codes 1921, as amended by Chapter 168 of the Session Laws of 1925 (p. 300 et seq.), made application to the register of state lands and the board of land commissioners to repurchase the land upon the amortization plan, accompanying his bid with the payment required— $263.28. The board accepted the application and the parties executed the contract. The balance due the state, after the payment of the $263.28, was made payable in installments through a period of thirty-three years, the deferred payments bearing interest at five per cent per annum, with the provision that payment might be made in full at any time before maturity. The state agreed, upon the faithful performance of the contract by the purchaser, his heirs, legatees or assigns, to convey the title. (Sec. 1938, as amended.)

The defendant county, through its officers, during the year 1927 assessed and levied taxes upon the land at its full cash value, alleged to be $2,183.33, instead of the equity or interest of the purchaser in the property, which then amounted to the sum of $263.28. The purchaser refused to pay the tax and requested the state to have canceled that part which he alleged was unlawfully assessed against the property. The state paid under protest on behalf of Berry the full amount of the

taxes levied against the property, $29.37. The amount of the tax paid by the state, based upon the value in excess of $263.28, was $25.84. The state then brought this suit, demanding judgment against the defendants in the sum of $25.84, and that the assessment, based upon a valuation in excess of $263.28, be declared illegal. The trial court rendered judgment in accordance with the state's demand, whereupon the defendants appealed.

The land was not taxable for the year 1926, for at noon on the first Monday of March of that year it was property belonging wholly to the state. (Constitution, Art. XII, sec. 2; secs. 1998, 2002, Rev. Codes 1921.) The interest of the purchaser in the land, but that only, was taxable for the year 1927. Section 1868, Rev. Codes 1921, declares: "All lands sold under the provisions of this Act, or any interest therein, shall be subject to taxation; and the register of state lands shall furnish to the county assessors of each county, on or before the fifteenth day of March of each year, a list of all lands sold during the year ending on the first Monday of March, to whom sold, the purchase price, and the amount actually paid; provided, that no purchaser of state lands shall be taxed for a greater percentage of the value of the land than the ratio which the amount actually paid on the purchase price bears to the total purchase price; and provided further, that in case of a sale for taxes, the interest only of said purchaser shall be sold." The language of this section seems plain and unequivocal, but the defendants rely upon the case of *Courtney* v. *Missoula County,* 21 Mont. 591, 55 Pac. 359, in which it was held that state lands after sale, and before the price was fully paid, were subject to taxation as the property of the purchaser. But that holding was under a statute differing widely from section 1868, supra. Under the statute as it existed when the *Courtney Case* was decided, a purchaser of state lands was required to bind himself to purchase the land, and to give a bond conditioned for the payment of the residue of the purchase money. The court held that

having entered into a valid contract to pay the consideration agreed upon and to accept title to the land which the state on its part was bound to convey, the purchaser became the owner of the land for the purpose of taxation; he was held to be the beneficial owner of the land. Shortly after that decision the statutes then in effect were repealed and a new policy respecting the taxation of a purchaser's interest in state lands was adopted. (See H. B. 45, Session Laws 1899, p. 87 et seq.) Section 3487 of that law (p. 90) provided in part, that "the purchaser shall not be asesssed upon his contract for an amount greater than that paid by him, and provided further, that in case the taxes become delinquent, the interest only of said purchaser shall be sold therefor at the delinquent tax sales." This section was carried forward into the Revised Codes of 1907 as section 2170. It was absorbed in section 50 of Chapter 147 of the 1909 Session Laws, page 310, which now appears as section 1868, supra.

The interest of the state in the land could not be taxed at all. "The property of the United States, the state, counties, cities, towns, school districts, municipal corporations, and public libraries shall be exempt from taxation." (Constitution, Art. XII, sec. 2.) "Under our Constitution and statutory provisions, the property of the state may not be taxed. The interest of the state in the land, anterior to payment of the full purchase price, is its property, and that interest in no wise has been affected by the assessment." (*Courtney* v. *Missoula County*, supra.)

The purchaser, Berry, had paid $263.28 upon the purchase price and no more, and he could not lawfully be taxed for a greater percentage of the value of the land than the ratio which the amount he had paid on the purchase price bore to the total price.

The *Courtney Case* has no application to our present statutes respecting the taxation of a purchaser's interest in state lands, nor to contracts entered into pursuant thereto. And it may as well be said, once for all, that under our Constitution,

while state lands after title passes to a purchaser may be taxed, as are other lands, until title does pass only the value of the purchaser's interest therein may be taxed. While authority for this statement would not seem to be necessary, see *Olds* v. *Little Horse Creek Cattle Co.*, 22 Wyo. 336, Ann. Cas. 1917C, 120, 140 Pac. 1004; *Graff* v. *Ackerman*, 38 Neb. 720, 57 N. W. 512; *Lewis* v. *Christopher*, 30 Idaho, 197, 163 Pac. 916.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, being disqualified, takes no part in the foregoing decision.