391 P.2d 328

**BOARD OF EQUALIZATION OF the COUNTY OF BERNALILLO, New Mexico, and its individual members, Gerald R. Cornelius, Harry E. Kinney, Vance Mauney, Petitioners-Appellees,**

v.

**HEIGHTS REAL ESTATE COMPANY et al., Respondents-Appellants.**

**No. 7355.**

Supreme Court of New Mexico.

March 23, 1964.

Rehearing Denied May 1, 1964.

Hannett, Hannett & Cornish, Albuquerque, for appellees.

Marron & Houk, James H. Foley, James M. O'Toole, Modrall, Seymour, Sperling, Roehl & Harris, James P. Saunders, Jr., Shaffer & Butt, Albuquerque, for appellants.

CHAVEZ, Justice.

Respondents-appellants appeal from a judgment of the district court of Bernalillo County, which construed § 72–1–3, N.M. S.A., 1953 Comp., as requiring the county assessor to place lands being purchased under contract from the State of New Mexico on the tax assessment roll at 16% of the total contract price paid for said lands, or the true market value thereof. Petitioners-appellees will be referred to as the "Board," and respondents-appellants as "purchasers."

The Board filed a petition against the New Mexico State Tax Commission and the State of New Mexico, alleging that the county assessor of Bernalillo County assessed the interest of purchasers under executory contracts for the purchase of state land at 5% of the total contract price as the taxable value of the equitable interest of purchasers; that the Board, in reviewing the 1959 assessment of the equitable interests in state lands being purchased, computed the taxable value to be 16% of the 5% of cash paid by said purchasers; that the tax commission, in reviewing the Board's ruling, held that the equitable interest accruing to the owner of any contract for the purchase of state land, should be assessed and taxed to such owner or contractee at the cash value of the legal or equitable interest, together with the value of all improve-ments thereon, and that the cash value should consist of the total amount of cash paid by the contractee or owner; that the purchasers appealed from this order of the Board, and the state tax commission found that the properties described had been unlawfully assessed and not in accordance with § 72–1–3, supra, as inter-preted by the attorney general in his opin-ion dated April 25, 1961; and that the tax commission ordered that the properties be assessed at the cash value of the pur-chasers' equity in said properties, instead of the full cash value thereof. Purchasers then alleged that a controversy exists as to the interpretation of § 72–1–3, supra, and prayed for a declaratory judgment, asking the court to construe § 72–1–3, supra, and that the court declare the as-sessed value to be placed on the tax rolls of lands, or any equity therein, purchased from the State of New Mexico.

The trial court ordered that the State of New Mexico be dismissed as a party to the suit and permitted an amended petition to be filed, which amended peti-tion reiterated the allegations of the orig-inal petition. Upon motion filed, the trial court added some sixteen purchasers un-der state land contracts as respondents. Answers were filed by said purchasers as-serting, as a first defense, that the allega-tions in the petition were impertinent and irrelevant; as a second defense, that an equitable conversion is not effected by

said contracts and that respondents have only a right to purchase, which is the sole property interest subject to taxation; as a third defense, that title to the lands affected by the contracts remains in the state, and that only the equity represented by the portion of the purchase price paid under the contract can be legally assessed under the constitution and laws of New Mexico, and must be assessed in the same manner as other lands in Bernalillo County are assessed i. e., 16% of the 5% equity.

The facts were stipulated by the parties and, after a hearing, the trial court rendered an opinion and entered judgment holding that the lands affected by the contracts should be placed on the assessment roll at 16% of the total contract price paid for said lands, or the true market value of the property after appraisal by the assessor.

The stipulated facts were: During the years 1955 through 1959, purchasers entered into contracts with the commissioner of public lands for the purchase of certain state lands, title to which was in the state; that prior to April, 1961, the county assessor assessed the value of the purchasers' equities under the contracts at 5% of their respective contract prices; however, in April, 1961, the Board ruled that the assessed value of the purchasers' equities should be 16% of the fair market value, to be established by appraisers; that at that time all privately owned property in Bernalillo County was assessed at 16% of actual value; that appeal was taken from the Board's ruling to the state tax commission, who heard the appeal and entered an order on June 28, 1961, finding that the properties had been unlawfully assessed and not in accordance with § 72-1-3, supra, and ordered that the assessor and Board correctly assess the properties, by assessing only the cash value of purchasers' equity in said properties held under purchase contracts with the state, instead of the full cash value thereof.

Under the contracts, the purchasers pay 4% interest annually on the unpaid balance and, upon default, the contracts may be cancelled, payments become liquidated damages, all rights of purchasers to acquire said land cease, their rights in and thereto end, and the commissioner shall be entitled to immediate possession of the premises. Purchasers, under the contracts, are required to pay all taxes and assessments that may be levied or assessed on such lands.

Each of the purchasers made down payments on one or more contracts, in amounts ranging from $18,500 on a purchase price of $60,000, to $374.74 on a purchase price of $7,595.81. Purchasers, in their statement of facts, say that the total of all down payments made was $170,487.82, representing 5% of the purchase price, and

including the $18,500 payment mentioned above. The unpaid balance on all contracts was $3,239,268.58, requiring interest thereon to be paid annually in the amount of $129,570.

The trial court made the following conclusions of law:

"1. That a vendee of land in possession under an executory contract of sale with the State at the time of the assessment is the owner thereof for the purpose of taxation.

"2. Under this type of executory sales contract, the equitable estate, in its entirety passes immediately to purchaser at the moment the contract becomes effective and bare legal title for security purposes remains in the State.

"3. That contracts between the State and a citizen or private corporation are controlled by the same legal principles that govern contracts between private individuals.

"4. That the Constitution of the State of New Mexico does not exempt state lands sold under purchase contract from taxation, or provide any different method of taxation, but rather that taxes should be equal and uniform.

"5. That the assessment, as set out in Section 72–1–3, New Mexico Statutes, 1953 Annotated: 'At the cash value of such legal and equitable interest' means the market value of the land purchased.

"6. That land sold by the State, as in the case at bar, should be assessed equal to the assessed value of other lands, as is stated in Section 72–1–3, New Mexico Statutes, 1953 Annotated:

"' * * * equity so assessed shall not exceed the assessed value per acre of other lands of similar character located in the same County.'

"7. That the law requires the County Assessor to place said lands in the assessed roll at sixteen per centum (16%) of the total contract price paid for said lands or the true market value of the property after appraisal by the Assessor."

Purchasers submit three points upon which they rely for reversal. Under point I, they contend that the trial court's conclusion of law No. 2 is erroneous in that, although not specifically stated, said conclusion indicates that the trial court determined that an equitable conversion occurred, causing the purchasers' interest to be converted into an interest in the real property; also, that a purchaser under state land purchase contracts acquires no

equitable title until the purchase price has been paid in full.

With these contentions we cannot agree. A reading of the trial court's conclusions of law together convinces us that it was the trial court's opinion that, for the purpose of taxation, a purchaser of state land in possession of an executory contract is the owner thereof, the equitable estate in its entirety passing immediately to the purchaser upon the execution of the contract and the bare legal title, for security purposes, remaining in the state.

Purchasers cite § 10 of the Enabling Act, the pertinent part of which reads:

"All lands, leaseholds, timber, and other products of land before being offered shall be appraised at their true value, and no sale or other disposal thereof shall be made for a consideration less than the value so ascertained, nor in any case less than the minimum price hereinafter fixed, nor upon credit unless accompanied by ample security, and the legal title shall not be deemed to have passed until the consideration shall have been paid."

The above section is of no assistance in solving the problem before us.

Zinn v. Hampson, 61 N.M. 407, 301 P.2d 518, cited by purchasers, is also of no help, as the only question decided in that case was that the commissioner of public lands had no authority to issue a patent to a portion of a tract of land being sold under a state land purchase contract.

Purchasers primarily rely upon Olds v. Little Horse Creek Cattle Co., 22 Wyo. 336, 140 P. 1004. In that case, the purchaser (Cattle Co.) purchased state school lands and was the owner of a certificate of purchase executed by the proper state officials. The agreed statement of facts recited that the land was assessed as land, and that the tax was a tax on the land as land, and not a tax on the interest or equity of the plaintiff in the land. The only question presented was whether the land, as such, was subject to taxation as land as the property of the purchaser and before the purchaser had paid in full. The objection to the tax was based upon the constitutional provision that property of the state is exempt from taxation.

The Wyoming court discussed the doctrine of equitable conversion and said that it did not apply. The court recognized, however, that some states, by statute, authorize the interests of the purchaser to be assessed and taxed in a manner intended to avoid a conflict with a constitutional provision exempting state property from taxation, and stating a rule for its valuation, or requiring the lands to be assessed to the purchaser the same as other lands. Under the Wyoming statute, state land is sold upon the payment of not less than 10% of the purchase price and the balance

in 30 equal installments, with 4% interest on the deferred part. When state land has been purchased, the purchaser is given a certificate of purchase and upon payment of the full purchase price, together with the lawful interest thereon, the purchaser receives the patent for the land. The court, in that case, stated that the only question presented was whether state land sold under the constitution and statutes of Wyoming was subject to taxation as land, as the property of the purchaser, before said purchaser had become entitled to a patent by paying the full amount of the purchase price. The question as to the right to assess and tax the interest or equity of the purchaser of the land was not involved in that case, and the court added that the statute contains no provision expressly referring to the matter of taxation of the land after a conditional sale and while the purchase price remains unpaid, and the certificate of purchase makes no provision for the payment of taxes. The Wyoming court held that since the property of the state is exempt from taxation, it being admitted that the interest of the purchaser as the owner of the certificate of purchase was not assessed or taxed, although the purchaser's interest may be taxed, but that the land was assessed and taxed as land, that the exemption continued until the purchaser obtained a patent.

In Colorado Farm & Live Stock Co. v. Beerbohm, 43 Colo. 464, 96 P. 443, by constitutional provision and by statute, property belonging to the state is exempt from taxation so long as title is vested in the state. Article 10, § 4, Constitution of Colorado, Session Laws 1887, § 21, as amended by Act March 30, 1889. In 1890 and 1896, Colorado Farm & Live Stock Co. (plaintiff-in-error) entered into contracts for the purchase of state land. In 1906, the county commissioners of the county in which the land is located assessed the equity held by the purchaser for the years 1902, 1903, 1904 and 1905. The county treasurer served notice on the purchaser that unless the taxes were paid the land would be sold for delinquent taxes. The purchaser filed suit to restrain the county treasurer from selling the land, on the ground that such lands were not subject to taxation and enjoined the treasurer from selling the land. On March 22, 1902, an act was passed which provided that all lands purchased under state contract shall, during the life of the contract, be taxed only on the amount paid, including the improvements thereon. The Colorado court held that the constitutional provision and statute exempting state property from taxation necessarily entered into the contract of purchase made thereunder, and that the act of 1902, insofar as it attempted to subject to taxation, in contradiction of such exemption, the interest which one had ac-

quired under the contract to purchase, impairs the obligation of a contract in violation of Art. 2, § 11, Bill of Rights, and that an injunction would be allowed against the enforcement of a tax upon such property.

In Lewis v. Christopher, 30 Idaho 197, 163 P. 916, the court held that while it is true that under the statute the land itself is not subject to taxation while the title remains vested in the state, it is likewise true that the value of the interest therein, of the purchaser or certificate holder, may be taxed, and this interest is not limited to the amount of money paid under the terms of the contract, but to the value of purchaser's interest in the land. The court went on to say that the value of this interest can only be properly determined by ascertaining the full cash value of the land upon the market in the ordinary course of trade, and then determining the value of purchaser's interest in the land. The court further held that the purchaser's interest subject to taxation bears the same relation to the full cash value of the land, as the amount actually paid upon the contract bears to the total purchase price. The holding in State v. Lewis and Clark County, 84 Mont. 200, 274 P. 854, is to the same effect.

■ Appellants propose by the above cases that there is no taxable equitable estate if specific performance is unavailable. It is our view that the trial court was correct in concluding that the purchasers, under their contracts with the state, acquired an equitable estate upon the execution of the contracts, regardless of the nonexistence of the right of specific performance.

Purchasers, under point II, contend that § 72-1-3, supra, permits assessment of the full cash value of the purchasers' interest under a state land purchase contract and does not authorize assessment of the full value of the land affected by the contract.

Chapter 82, Laws 1912 (§ 7-8-18, N.M. S.A., 1953 Comp.), appears to be the first act to provide for the creation and organization of the state land office and for the disposition of state lands. Section 58 of that act provided that improvements placed upon lands leased for grazing, agricultural or mining purposes shall be subject to taxation, and in case of default in the payment of taxes on such improvements, and the sale thereof for such unpaid taxes, only the interest of the lessee shall be sold. This act was deemed superseded by Ch. 52, Laws 1917 (§ 7-8-9, N.M.S.A., 1953 Comp.), § 3 of which provided:

"All lands sold under the provisions of this act, or for which existing contracts are changed in conformity herewith, shall be assessed for taxation at their full value, which

shall in no case be more or less than that of similar lands of the same character issued under the provisions of this act shall be required to pay the taxes lawfully due on such lands as provided in this section, and failure to pay such taxes shall work a forfeiture of the contract."

Section 3 of the 1917 act was amended by Ch. 89, § 1, Laws 1919, as follows:

"The legal and equitable interests arising under and accruing to the owner of any contract for the purchase of any state lands, whether such contract be entered into under the provisions of this act or any other act authorizing the sale of state lands under contract, option or agreement entered into between the state and any person or corporation, shall be taxed to such owner or contractee at the full cash value of both such legal and equitable interest, together with the value of all improvements made upon such lands so contracted for; Provided that in no event shall such equity be taxed at less than forty per centum of the purchase price stipulated in such purchase contracts."

Section 1, Ch. 89, Laws 1919, and § 3, Ch. 52, Laws 1917, were amended by § 1, Ch. 9, Laws 1921. However, the 1921 law is identical with § 1, Ch. 89, of the 1919 act, except as to the proviso clause which reads:

"* * * Provided, that the assessed value of such legal and equitable interest, exclusive of the improvements, while such lands are used for grazing or any other purposes, shall not exceed the percentage of the purchase price paid up to the date of such assessment."

The pertinent provisions of § 2, Ch. 102, Laws 1925, are identical with § 1, Ch. 9, Laws 1921, except that in the 1925 act, after the words "date of such assessment" in the proviso clause, the following was added:

"* * * and in arriving at the assessed value of such equity for any year the land shall not be valued higher than lands of similar character located in the same county."

Thus, in the 1919 and 1921 acts, we have a provision that the legal and equitable interest of a purchaser shall be taxed at the full cash value of such legal and equitable interest, together with the value of all improvements made upon such lands. The proviso clause in the 1919 act says that in no event shall the equity be taxed at less than 40% of the purchase price; whereas, the 1921 act provides that the assessed value of such legal and equitable interest, exclusive of the improvements shall not exceed the percentage of the pur-

chase price paid up to the date of such assessment. The 1925 act provides that the equitable interest of the purchaser shall be taxed at the full cash value of such legal and equitable interest, together with the value of all improvements. It also provides that the assessed value of such legal and equitable interest, exclusive of the improvements, shall not exceed the percentage of the purchase price paid up to the date of such assessment, and that in arriving at the assessed value of such equity, the land shall not be valued higher than lands of similar character located in the same county.

The above acts were followed by Ch. 152, § 1, Laws 1933, (§ 72–1–3, supra), which provides:

"The equitable interest arising under and accruing to the owner of any contract for the purchase of any state lands, entered into between the state and any person, or corporation, *shall be assessed and taxed to such owner or contractee at the cash value of such legal and equitable interest, together with the value of all improvements* upon such lands so contracted for; Provided, that the equity so assessed shall not exceed the assessed value per acre of other lands of similar character located in the same county." (Emphasis added.)

It would thus appear that the legislative policy since 1919 has been to tax the legal and equitable interest, or the equitable interest, arising under a contract for the purchase of state lands, at the "full cash value" or at the "cash value." The question then arises—what is "cash value?" The legislature, under the 1933 act (§ 72–1–3, supra), used the term "cash value." The 1919, 1921 and 1925 acts used the phrase "full cash value." We find no significance in the deletion of the word "full." The terms "cash value" and "full cash value" are given the same definition, i. e., that amount at which property would be taken in payment of a just debt from a solvent debtor. 59 Cal.Code, Rev. & Tax., § 110; 10 Idaho Code, § 63–111; 3 Nev. R.S., § 361.025; 6 Utah C.A., 1953, § 59–3–1(5). See also, Ballerino v. Mason, 83 Cal. 447, 23 P. 530; State v. Virginia & T. R. Co., 23 Nev. 283, 46 P. 723, 35 L.R.A. 759.

In Dailey v. Foster, 17 N.M. 654, 134 P. 206, this court defined "actual cash value" as:

"* * * the price which it [the property] will bring in a fair market, after fair and reasonable efforts have been made to find a purchaser who will give the highest price. * * *"

and in Samosa v. Lopez, 19 N.M. 312, 142 P. 927, we defined "true value" by saying:

" 'True value,' as used in laws providing that property shall be assessed for taxes according to its true value, has been defined to mean the value which it has in exchange for money. State Board of Assessors v. Central R. Co., 48 N.J.Law 146, 4 Atl. 578, 607.

"Actual cash value of real or personal property has been defined to be the price it would sell for in the ordinary course of business, free from incumbrance, and not at forced sale. Morgan's L. & T. R. & S. S. Co. v. Board of Reviewers, 41 La.Ann. 1156, 3 South. 507, 511. It thus appears that the terms are practically synonymous."

It would thus seem that the terms "cash value," "full cash value," "true value," and "actual cash value," in one way or another, are defined as that amount at which a willing buyer would buy and a willing seller would sell.

Purchasers direct our attention to the provision in the 1921 and 1925 statutes which states that the assessed value of the purchaser's legal and equitable interest "shall not exceed the percentage of the purchase price paid." They say that the 1933 act eliminated this ceiling and substituted the provision that "the equity so assessed shall not exceed the assessed value per acre of other lands of similar character," and that in the same session the legislature enacted § 4, Ch. 86, Laws 1933 (§ 72-2-18, N.M.S.A., 1953 Comp.), which provided that whenever any real property is patented, or in any other manner becomes subject to taxation, the same shall be added to the tax roll for the next year following the date of the patent. This section is not inconsistent with the statutory provision that the legal and equitable interest accruing to a purchaser or contractee under a state purchase contract is subject to taxation. This section, as it relates to state land, can only mean that, since the interest of the state and title passes from the state to the patentee upon the issuance of the patent, the state's interest which was previously exempt from taxation shall be placed on the tax roll the year following the date of the patent.

■ Purchasers concede that their interest under the contract is subject to taxation. They say, however, that they should not be taxed at the full cash value of the land, but should be taxed at 5% of the market value of the land described in the contract and, therefore, that the tax should be 16% of 5% of the fair market value. We cannot agree. The legislature was well aware of the provision of the 1921 and 1925 statutes and, when they enacted the 1933 act, it is presumed that they intended to change the prior law and expressly said that the purchaser's legal and equitable interest shall be assessed at its cash value,

together with the improvements, provided that the equity so assessed shall not exceed the value per acre of other lands of similar character located in the same county. The express language of the 1933 act would negate purchasers' contention.

Stewart v. Common School Dist. No. 17, 66 Idaho 118, 156 P.2d 194, cited by purchasers, is distinguishable from the case before us. In that case, the Idaho statute, I.C.A. § 61–1123, originally provided that an equity in state lands should be assessed at "that proportion of the full cash value of the land which the amount paid thereon bears to the total amount of the purchase-price." The statute was amended by striking therefrom the provision which provided exactly how the purchaser's interest in state land should be determined, but the amendment did not provide any other or different method. It simply provided that the interest of a purchaser of state land "shall be * * * assessed for purposes of taxation as other property is assessed * * *." The court held that since the amendment failed to provide a new or different method of determining the value of the equity of a purchaser of state land, than that already provided by statute, the trial court properly held that defendants fix and determine such value by ascertaining the percentage of the purchaser's ownership, based upon the amount paid on the land sale certificate and the total pur-

chase price. In short, the court held that since the amendment failed to provide a new or different method of determining the value of the purchaser's equity, that the method provided in the original act should be followed.

Kelly v. Allen, (9 CCA 1931), 49 F.2d 876, is pertinent in resolving the question posed under this point. That case involved an action against the assessor of Yuma County, Arizona, the Arizona tax commission, the land commissioner and others, enjoining them from compelling payment of taxes assessed upon state school lands held by the plaintiff under a contract of purchase, and enjoining other defendants from assessing or levying taxes on said land. The defendants appealed. The Circuit Court reversed, holding that the power of the state to tax is unlimited; that the land was transferred to the state and is not held by the state as an instrumentality of the United States, but in its own right in trust for state schools; that the land in issue was sold to appellee for 5% cash, the balance in thirty-eight annual installments with interest at 5% payable annually; that the state constitution does not exempt lands sold under contract from taxation and that the statute provides that all school land shall be subject to taxation, the same as other lands; and further held that the state may tax the purchaser upon

the entire value and enforce collection against the entire interest of the purchaser.

We hold against purchasers on this point.

Purchasers' last point is that the state may not constitutionally tax the interests of a purchaser under executory contract for the sale of enabling act trust lands at the value of the land affected by the contract.

Purchasers again cite § 10 of the Enabling Act, supra, and discuss the question as to when title passes, and that state property is exempt from taxation. They also cite Art. VIII, § 1, of our constitution. Our constitution does not prevent the state from taxing the purchaser's interest on the full value of the land; neither does the constitution exempt state land sold under contract from taxation. The statute provides for its taxation and the purchaser, by express provision, agreed to pay all taxes and assessments levied or assessed on such land. Thus, the state may tax the purchaser upon the entire value and enforce collection against the interest of the purchaser. Kelly v. Allen, supra.

Finding no error, the judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.