Wilson, J.
In December, 1888, one Frank K. Atkins purchased from the state four quarter sections of state land for the price and sum of $6.00 per acre, being $960 for each quarter section. Upon payment in cash at the time of the purchase of thirty per cent of the purchase price of each tract, and the execution of a bond required by the state board of land commissioners, he received from the board a certificate of purchase in the usual form for each quarter section. Each bond ran to the people of the state of Colorado, and was in the sum of $1,844, being double the amount of the unpaid balance due on the purchase money. The condition was, “ that if the above bounden Frank K. Atkins will secure the state from loss or waste, and will not cut or waste more timber than shall be necessary for the improvement of the land, or for fuel for the use of the family of the purchaser, before final payment made for said land; and further, that he will well and faithfully pay the residue of the purchase money for said land to the people of the state of Colorado, in seven *122 equal annual payments, on the 24th day of December in each year, payments to be made to the state board of land commissioners, with interest on each of the deferred payments at the rate of seven per cent per annum from date; and further, that he shall and will faithfully comply with all the terms of the certificate of purchase issued to him by the register of the state board of land commissioners, and with all the provisions of the law relating to the sale, etc., of state lands, then this obligation to be void; otherwise to be and remain in full force and effect.” Each of the bonds was signed as surety by John A. Clough, now deceased, the administrator of whose estate is the defendant herein.
In April, 1889, Atkins assigned the certificates to one Stuart O. Henry, and thereafter, two of the seven annual payments provided for were made and indorsed upon the certificates. No. further payments were made. The Colorado Savings Bank afterwards became the owner of the certificates, through a mortgage executed to it by Henry upon his interest in the premises, and at its instance, the board of land commissioners ordered the attorney general of the state to institute this suit upon the bonds given by Atkins with Clough as surety, to recover the balance due on the purchase price of the said lands, upon condition that the bank pay all costs and expenses for the institution and maintenance of the suit, and further agreeing that upon recovery by the state, if such were the case, the state would convey the premises by good and sufficient deed to Thomas B. Stuart, assignee of the bank. The findings of the court were in favor of plaintiff upon the issues joined, but judgment was rendered against the defendant for nominal damages only, namely, for the sum of $1.00 in each cause of action. The plaintiff thereupon brings the'cause to this court on error for review.
The contention of the defendant is that under the proof, plaintiff in error failed to make a case, because it is claimed the bond was conditioned in the alternative for the performance of one of two things, and that plaintiff neither alleged nor proved the nonperformance of both of the conditions, *123 both of which were essential to have sustained a judgment in behalf of plaintiff. It is further contended that in the event this proposition is not correct, that the bonds were penal bonds, and under the pleadings and proof, plaintiff was entitled to recover, if at all, nominal damages only, as it did.
It will be observed that the bond was fourfold in its conditions. The obligor bound himself, first, to secure the state from loss or waste ; second, not to cut or waste more timber than should be necessary for the improvement of the land, or for fuel for the use of the family before final payment ; third, to make payment of the residue of the purchase money at the times and in the manner provided in the certificate of purchase ; fourth, that he would faithfully comply with all the terms of the certificate of purchase issued to him, etc. We think the law is well settled, as contended for by defendant, that the obligation expressed in the bond which the maker assumed, to comply with all the terms of the certificate of purchase for the land, makes such certificate of purchase, with its terms and conditions, a part of the bond. Forst et al. v. Leonard et al., 112 Ala. 296; Locke v. McVean, 33 Mich. 473; Mayor, etc., v. Construction Co., 82 Hun, 553. In Locke v. McVean, it was said by the court that in such case the transaction must be viewed as it would be if the contract, — which in this case was the certificate of purchase, —had been copied into the preamble of the condition of the bond. The recitals in the certificate of purchase, therefore, constitute a part of the bond, and reference must be made to them equally with any other recital in the bond itself, to determine the character of the obligation which the maker of the bond and his surety assumed, and their liabilities thereon. Each of these certificates, after reciting the fact of purchase by Atkins, the amount of the purchase money, the payment of the thirty per cent, and the fact that upon surrender of the certificate, and fully complying with the conditions of the bond, and with all the provisions of the statute in such case, and upon the payment of the balance due as provided, the said Atkins would be entitled to a patent for the land, *124 also contained the following provision : “ Time is an essential ingredient in the premises, and the purchaser herein agrees in accepting the certificate, to make the payments as above specified; or on failure so to do, to immediately vacate said premises; thereafter remaining in possession of said property shall be unlawful, and the occupier may be summarily ejected, and the right of possession shall revert to the state of Colorado.” It is upon this that the defendant bases his claim that the bond, so far as it applied to the payment of the balance of the purchase money, was in the alternative. It is his contention that the obligation with reference to the payment of the balance of the purchase money could be satisfied by the immediate vacation of the premises, and in this, we think he is correct.
In addition to such construction being apparently supported by the plain language of the contract, an examination of the various statutes in reference to the sale of state lands, and the powers and duties of the state board of land commissioners will show such to have been the intent of the law under which the contract was executed, and which enters into and controls it. The first legislative enactment-in regard to the sale and disposition of state land was in 1877. Genl. Laws, page 719. Section 5 of this act provided that the purchaser of each tract at public sale should make the first cash payment, being thirty per cent of the whole amount of the purchase money, and execute a penal obligation, conditioned for the payment of the residue of the purchase money, to the people of the state of Colorado in seven equal annual payments, with interest, etc. Section 9 provided that if any one payment should remain unpaid for one year after the same became due, the state board of land commissioners might direct the attorney general to put such obligation in suit, or might again sell the land for part payment of which the obligation had been given. By these statutes, the intent was manifestly shown to make the primary, principal, and only purpose and object of the bond, that for the direct payment of money, — in other words, a specific promise-to pay *125 the balance of the purchase money for the land bought. Payment alone could satisfy it. This was the only kind of bond that -the board of land commissioners was authorized to exact or receive, and it was not empowered to insert in it any condition other than for the payment of the purchase money.
At the legislative session of 1887, the entire act of 1877, together with all acts amendatory of it, was repealed, and a new statute upon the same subject, but radically different in its important features, was . enacted. Under the provisions of this new act, the sale now under consideration took place, and by it the rights of the parties to this suit must be measured and determined. In this new act, there was no provision or requirement whatever, as in the old, for the taking or requirement by the board of a bond of any character to be executed by the purchaser for the making of the deferred payments. In sections 14 and 15, which prescribe the time, terms, and conditions of sale, there is no reference to, or any provision whatever for a bond of any kind or character, to be given by or exacted from the purchaser. The issuance of the certificate of purchase is made dependent alone upon compliance with the conditions expressed in those two sections. Section 16, which is apparently substituted for section 9 of the original act wholly omits the provision that the state board might, upon the failure of the purchaser to make any one of the payments provided for in his certificate, direct the attorney general to bring suit upon his obligation. Section 18 provides that “ when in the judgment of the state board a bond by the purchaser of state lands is necessary, the state board shall require such purchaser to give a bond upon such conditions as the board may determine.” Here' was a broad power given to the board to require bond with such conditions as it might prescribe. It seems unreasonable to us, that, as contended by plaintiff, the object of this provision was alone to empower the board to exact a bond whose' primary and principal object should be to insure the making of the deferred payments of purchase money. The provisions for such a bond, as contained in the old law, had been *126 entirely omitted. It seems more reasonable to us that the legislative intent was to empower the board to require a bond to protect the interests of the state more especially in other respects, such as from waste, and a destruction of timber, if the land was timbered. The interests of the state were carefully guarded and fully protected, so far as the making of deferred payments was concerned, without a bond. The purchaser had already paid nearly one third of the purchase money in cash, before the execution to him of a certificate. The legal title to the land still remained in the state, the certificate not purporting to convey to the purchaser any title whatever, and another provision of the statute expressly empowered the board, in case of a failure to make any one payment, to resell the land, all prior payments in such case being forfeited to the state. As the law contemplated, however, the improvement of the land sold, and the sale only to those who contemplated actual settlement, it might be highly important, and would be, in fact, to require a purchaser to indemnify the state against any waste which might materially diminish the value of the land, and thereby entail a serious loss to the state in the event the sale was not finally consummated. Under this provision, too, it is obvious that the board might have made the sole condition of the bond an obligation not to commit waste, or not to cut any more timber thap was necessary for the improvement of the land and for fuel for the purchaser, or for vacation of the premises, upon failure to make any one payment. This last was under the apparent theory of the law, a very important condition. A sale was contemplated only to a settler, in order, no doubt, to prevent the acquirement of the land by speculators, and it was highly important the state should have full possession in event the purchaser failed to comply with his agreements, and the state undertook to exercise its right of resale to another. The state could fully protect itself from the nonpayment of purchase money by withholding a title, and a resale, but it could have no protection otherwise than by a bond from the purchaser, from waste and the wrongful withhold *127 ing of possession. Because the board saw fit to insert as one of the conditions of the bonds in question that the purchaser should make the deferred payments according to his agreements, is no reason why, in our opinion, the bond should be construed as one whose principal object and purpose was to secure such payment. The vacating of the premises was essential in order that the board might resell, as it was empowered to do in section 16, in case of nonpayment of the purchase money, and the vacating could only be required or demanded in case of such nonpayment. It seems, therefore, clear to us to have been the legislative intent that, as evidenced by the terms of the bond itself, the condition as to the payment of the purchase money might and would be satisfied by a prompt vacating of the premises. The bond was in this respect, but in no other, in the alternative.
Our conclusion as to the legal construction of this provision in the bond is manifestly in harmony with the evident policy which the legislature by its act of 1887 intended to adopt with reference to the sale of state lands. This was not only to secure, as .required by the constitution, “ the maximum possible amount therefor,” which was done by retaining the old requirement that the land should be sold at public auction, after due notice, and none at less than appraised value previously made, but also to insure the settlement or improvement of the land by providing that sales should be made to actual settlers only, or to persons who would improve the same. This most laudable object was evidently to prevent purchases for speculation only, as we have said, and to add to the material wealth of the state. That this was one of the chief objects sought to be attained, is shown by the express language of section 14. It was in furtherance of this purpose that the power to require a bond was given to the board of land commissioners. In'case a purchaser should fail to make payments, the state would not thereby alone suffer any damage, because it had already received nearly one third of the entire purchase money in cash, and still owned the legal title to the land, with power expressly granted by *128 statute to sell again in such contingency. If, however, a purchaser had taken possession of the land before such failure, and retained it thereafter, then the state might be injured, because of its inability to give possession to a subsequent purchaser. It might also be materially damaged if a purchaser in possession, and before he had completed final payments, should commit such waste upon the land as to destroy or impair its value. It was to protect the state against damages resulting from these causes that the bond was required. It was not unreasonable, therefore, and was in strict accordance with its policy, for the state to say to the purchaser, as we believe it does by this provision in the bond, “ If you fail to make the payments of purchase money, you may surrender possession, so that the land may be again sold ; and thereupon you will be relieved and released from all further liability for the remainder of the purchase price. If you do not, you will be held liable on your bond as liquidated damages for the entire unpaid balance of the purchase money.” The maker of the bond was thus bound to perform only one of the conditions expressed in the alternative, and which one was at his election. It was necessary, therefore, for the plaintiff in order to have stated a good cause of action, to have alleged in its complaint the nonperformance of both of the conditions in the bond stated in the alternative ; namely, that the purchaser had failed to make the payments, and that he retained possession of the premises. There was no breach of the condition of the bond in this respect until the purchaser failed to make the payments required, and also failed to comply with the alternative condition. Reynolds v. Torrance et al., 2 S. C. L. 206; Richardson v. Beaumont, 20 N. J. L. 578; People v. Tilton, 13 Wend. (N. Y.) 597 ; Morgan v. Menzies, 60 Cal. 341. If this was a necessary allegation to have constituted a good cause of action, it was of course necessary for the plaintiff also to have proved it before it would have been entitled to a recovery. Neither was done. There was no evidence at all as to possession, but the case was tried and argued in this court upon the theory that neither the *129 plaintiff nor his assignee had ever entered into actual possession of the land. Whether this be true or not, the failure to allege in the complaint that the premises had not been vacated, which was a condition of the bond, would have defeated any right of recovery by plaintiff.
Counsel contend that even if it be true that the bond might have been satisfied by the surrender of possession, this could have been effected only by a surrender to the state of the certificate of purchase, which was not done. We do not think so. The words “.vacate said premises,” in their ordinary signification and especially when considered in connection with the evident policy and object of the law to which we have referred, could have meant only a surrender of actual -possession, of possessio pedis. This alone stood in the way of the board in making a resale of the land, to do which it was specially empowered. If neither purchaser nor his assignee ever had such possession, this became of itself a compliance with the condition to vacate the premises.
It must be confessed that the statute under which the sale of land under consideration was made, was in some respects apparently defective, and some of its provisions difficult to understand, and possibly more difficult to execute, but we do not believe that such defects in anywise affect the question here presented for consideration. Even if it did, the court must bear in mind the elementary proposition that the liability of a surety is strietissimi juris, and that all reasonable doubts should be resolved in his favor.
The defendant urged as a defense, and argued at length, that the bonds were penal obligations, and that if the plaintiff was entitled to recover at all, it could recover only nominal damages. It is unnecessary, however, to consider this, because the views which we have expressed as to the other defense are conclusive of the case. The trial court seems to have adopted the theory of the defendant as to this second defense, and directed a judgment in favor of plaintiff, for nominal damages only. This was, of course, in view of the conclu *130 sion at which we have arrived, error, but it was error in favor of the plaintiff, and it has no right to be heard in complaint. The defendant interposes no objection to the judgment, and it will therefore be affirmed.

Affirmed.