## SARGENT & LAHR v. HERRICK & STEVENS.

### ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 149. Argued April 25, 1911.—Decided May 15, 1911.

The mere location of a land warrant does not operate as a payment of the purchase price and does not operate to pass the equitable title from the United States.

A State is without power to tax public lands which have been located under warrant until the equitable title has passed from the United States.

Although if the locator had been the lawful owner of the warrant

location would have entitled him to patent, if the Land Office found him not to be the lawful owner, location does not operate to pass the title until he substitutes and pays the Government price, and meanwhile the United States has such an interest in the land as renders its taxation by the State invalid.

140 Iowa, 590, reversed.

THE facts, which involve the right of a State to tax public lands located under warrant before substitution and payment of government price, are stated in the opinion.

*Mr. Robert Healy,* with whom *Mr. M. F. Healy* and *Mr. Charles A. Clark,* were on the brief, for plaintiff in error.

No brief was filed for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to quiet the title to 80 acres of land in the State of Iowa, and the facts, in so far as they are material here, are these: In 1857, Hartzell I. Shaffer located upon the land a military bounty land warrant, issued to Jacob Hutson under the act of Congress of March 3, 1855, 10 St. 701, ch. 207, and received from the local land office a certificate of location. Shortly thereafter he transferred the certificate and his right to the warrant and to the land to Amos Stanley. When the location was reported to the General Land Office, that office suspended it because Hutson had made two assignments of the warrant, the first to William Maltby and the second to Shaffer, and because there was no relinquishment by Maltby. In 1875, Stanley, or a transferree of his, surrendered the certificate of location to the General Land Office and withdrew the warrant for the purpose of straightening out the difficulty arising from its double assignment, if

that could be done. But apparently nothing was accomplished in that direction for the warrant never was returned. The suspension continued until 1904, when Sargent and Lahr, who had succeeded to the rights of Stanley, perfected the location by substituting the government price of the land for the warrant. This was done under Rule 41 of the circular of the Land Department relating to such locations, which reads as follows (27 L. D. 225):

"When a valid entry is withheld from patent on account of the objectionable character of the warrant located thereon, the parties in interest may procure the issue of a patent by filing in the office for the district in which the lands are situate an acceptable substitute for the said warrant. The substitution must be made in the name of the original locator, and may consist of a warrant, cash, or any kind of scrip legally applicable to the class of lands embraced in the entry."

At the time of the substitution Sargent and Lahr received from the local land office a certificate of purchase issued in Stanley's name, and later in the same year received a patent issued in his name and reciting that it was predicated upon the substitution of the purchase price for the warrant. In 1875 the land was sold for the nonpayment of taxes levied upon it by the officers of Clay County, Iowa, two years before, and whatever title passed under that sale is held by Herrick and Stevens, who were the plaintiffs in the trial court. Sargent and Lahr, who were the defendants, claim under the warrant location as ultimately perfected through the substitution of the purchase price and then passed to patent. The trial court sustained the tax title and entered a decree for the plaintiffs, which was affirmed by the Supreme Court of the State. 140 Iowa, 590.

As the State was without power to tax the land until the equitable title passed from the United States, and as

that title did not pass until there was a full compliance with all the conditions upon which the right to a patent depended (*Wisconsin Central R. R. Co.* v. *Price Co.*, 133 U. S. 496, 505), it is apparent that the validity of the tax title depends upon the question whether the location of the warrant in 1857, without more, gave a right to a patent.

Among the conditions, upon compliance with which such a right depends, none has been deemed more essential than the payment of the purchase price, which in this instance could have been made in money or by a warrant like the one actually used. The warrant was assignable and was usable at a rate which made it the equivalent of the price of the land. And had Shaffer been the lawful owner and holder of the warrant, there could be no doubt that its location by him would, without more, have entitled him to a patent. But as the General Land Office found, in effect, that he was not the lawful owner or holder of the warrant, and as that finding is conclusive in the circumstances in which it is brought into this case, it is perfectly plain that the location of the warrant did not, without more, give a right to a patent. In other words, that location did not operate as a payment of the purchase price and so did not operate to pass the equitable title from the United States. Besides, until the payment in 1904, it was wholly uncertain that the location ever would be perfected, there being no obligation upon any one to perfect it. It follows that during the intervening years the United States had such an interest in the land as to make its taxation by the State void.

The case of *Hussman* v. *Durham*, 165 U. S. 144, is like this in all material respects, the most noticeable difference being that there the assignment to the locator was forged while here it was ineffectual because of a prior assignment. In that case this court, after holding, in substance, that the doctrine of relation cannot be invoked to give effect

to a title resting upon the wrongful taxation of land while
both the legal and the equitable title were in the United
States, said:

"Confessedly, though a formal certificate of location
was issued in 1858, there was then in fact no payment for
the land and the government received nothing until 1888.
During these intervening years whatever might have
appeared upon the face of the record the legal and the
equitable title both remained in the government. The
land was, therefore, not subject to state taxation. Tax
sales and tax deeds issued during that time were void.
The defendant took nothing by such deeds. No estoppel
can be invoked against the plaintiff. His title dates from
the time of payment in 1888. The defendant does not
hold under him and has no tax title arising subsequently
thereto."

For these reasons we hold that the Supreme Court of
the State erred in sustaining the tax title.

*Reversed.*