## OLDS, COUNTY TREASURER, v. LITTLE HORSE CREEK CATTLE COMPANY.

### (No. 782.)

TAXATION—STATE LANDS—CONTRACT OF PURCHASE—VENDEE IN POSSESSION.

1. In an action to enjoin the sale of State land held by plaintiff under a certificate of purchase, the agreed statement of facts recited that the land was assessed for taxation as land, and in the same manner as all other lands in the same vicinity, that it was not an assessment of the interest or equity of the purchaser, and that the tax was levied on the land as such and not on the interest or equity of the plaintiff in the land. *Held,* that, in view of the statutory provisions regulating the assessment of property for taxation, requiring property to be listed to the owner and real property to be assessed at its true value in money, the general language of the agreed statement permitted the inference

that the land itself was assessed by its proper description
at its true value as land, and not otherwise, and that the
intent and purpose of the assessment was to assess the en-
tire interest which would ordinarily be covered and bound
by an assessment of land to the owner, viz: the fee or what
is equivalent to it.

2.  The rule that a vendee in possession of land under a contract
of purchase is liable for taxes assumes that the property is
subject to taxation, and cannot properly be applied so as
to allow the taxation of property or an interest therein de-
clared to be exempt by constitutional provision or by some
principle putting it beyond the power of the Legislature to
authorize its taxation.

3.  Such rule, so far as it rests upon judicial decision, results
from the application of the doctrine of equitable conver-
sion respecting contracts for the sale of land prior to the
conveyance of the legal title, whereby, in equity, the vendee
is treated as the beneficial or equitable owner of the land,
and the vendor as the owner of the purchase money, the
vendor becoming as to the land a trustee for the vendee,
subject to the performance of the latter's obligations and
the vendee as to the purchase money a trustee for the
vendor, who has a charge or lien on the land or the equit-
able estate of the vendee therefor, and refers to a valid
contract binding upon both parties, containing an obliga-
gation on the part of the vendor to convey and on the part
of the vendee to pay the purchase money, and has no ref-
erence to a mere option to purchase or to complete the
purchase.

4.  Under the rule in equity defining the position of the parties
to a contract for the sale of land, while the vendee is
spoken of as the equitable owner of the land, and the ven-
dor as the owner of the purchase money and trustee of
the land or title for the purchaser, the vendee does not ac-
quire a complete equitable title until upon paying the pur-
chase money and complying with the other conditions prec-
edent he has become entitled to a conveyance; nor is the
vendor prior to full payment of the purchase price a mere
trustee, for he is trustee subject to the performance of the
vendee's obligations, and until those obligations are per-
formed the vendor not only holds the legal title but has a
substantial interest in the property.

5.  If the State in selling public lands on installments occupies
no better position than that of an ordinary vendor, yet,
having retained the title as security for the unpaid pur-

chase money, it has an interest in the land that is "property" within the provision of the Constitution exempting State property from taxation, so that the land cannot be taxed in such a manner as to imperil that interest.

6. Under the statute providing for the sale of State lands to be paid for in annual installments and the issuance and delivery of a patent when the purchase price has been fully paid and the conditions of the certificate of purchase complied with, the State retains an interest in the land, although ·the purchaser is given possession thereof, and while such interest is retained by the State the land is exempt from taxation as such, though the purchaser's interest therein may be assessed if provided for by law.

7. One in possession of State lands under a certificate of purchase may, prior to his acquiring a right to a patent conveying legal title to him, object to a sale of the land for taxes, on the ground that the land was assessed and valued as land and illegally assessed against him as his property.

[Decided May 15, 1914].          (140 Pac. ·1004.)

ERROR to the District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

The Little Horse Creek Cattle Company, a corporation, brought the action against Ray K. Olds, as County Treasurer of Laramie County, to enjoin the sale of certain State land for taxes; the land being in the possession of plaintiff under a certificate of purchase. Upon the submission of the case on the pleadings and an agreed statement of facts judgment was rendered for the plaintiff, and the defendant brought error.

*Samuel M. .Thompson* and *Wilfrid O'Leary,* for the plaintiff in error.

Although the State retains the legal title to the land as security for the deferred payments, the property belongs to the purchaser for the purpose of taxation. After the initial payment is made and the purchaser enters into possession, the State has no more control over the land and cannot defeat the purchaser's title or possession. (Courtney v. Missoula Co., 21 Mont. 591, 55 Pac. 359; Edgington v. Cook, 32 Neb. 551, 49 N. W. 369). The State holds the

legal title only as trustee. The real beneficial owner is the purchaser, who, under his contract of purchase, may pay the balance of the purchase price at any time within the prescribed period and compel the issuance of patent. To hold that he cannot be taxed on the land until he makes final payment would have the effect of deferring final payment to the last possible moment. (Farrer v. Purdy, 69 Mo. 601). The purchaser has no better title at the end of the period of payment and when patent issues than he has at present; nor will he have any more use of the land, though he may have a better evidence of title after patent. Having all the benefits of the land he is the one upon whom the tax burden should fall. (Miller v. Corey, 15 Ia. 166). The presumption that public property is exempt from taxation ceases when the property passes from the control of the public. (1 Cooley on Taxation, (3rd Ed.) 268-269). While the land in question is sought to be taxed as land, it is taxed as the property of the purchaser and not as the property of the State.

*Thomas Hunter,* for defendant in error.

All State property is exempt from taxation, and this includes all lands belonging to the State. The constitutional exemption is not limited to property belonging exclusively to the State and free from any interest or equity of a purchaser, nor is it limited to property while used for governmental purposes. So long as the State retains an interest in the land it is exempt. The revenue law falls far short of showing or indicating any authority or Legislative intent to tax the land in question. This land could not be sold to pay the taxes for the legal title remains in the State. The purchaser has little more than a right of possession. The contract authorizes the State to enter and regain possession without resort to legal proceedings of any character. Hence the purchaser has neither the legal nor the full equitable title. If the tax complained of is legal, then it constitutes a first lien on the land, which must attach without regard

to individual ownership, and a sale to satisfy the lien would convey a new and unimpeachable title. The constitutional exemption of State property from taxation prevents a tax having that effect. (State v. Stevenson, (Ida.) 55 Pac. 886; Corcoran v. Boston, (Mass.) 70 N. E. 197; Witt v. Armstrong, 6 S. W. 225; Hardy v. Hartmen, 4 So. 545; Henderson v. State, 53 Ind. 60; Willey v. Koons, 49 Ind. 272). It is well settled by a long line of decisions that the State cannot tax public lands of the United States until the settler or purchaser becomes vested with the full equitable title. (Sargent v. Herrick, 221 U. S. 404). The decisions upholding a tax on State lands held under contract of purchase are based upon either constitutional or statutory provisions differing materially from those in this State.

POTTER, JUSTICE.

This is a proceeding in error for the review of a judgment in an action brought by the Little Horse Creek Cattle Company, a corporation, against the County Treasurer of Laramie County enjoining the defendant therein, as said treasurer, from selling the south half of the south half of section 16 in township 18 north, of range 62 west of the Sixth Principal Meridian, for taxes levied upon the same for the year 1912, and also restraining the performance by the defendant of any and all acts which might tend to enforce the payment of such tax by the plaintiff.

The land in question is State school land, that is to say, it comes within the description of lands granted to the State for the support of common schools, and the plaintiff is the owner of a certificate of purchase executed by the proper State officers reciting a sale of the land to the plaintiff on December 23, 1911, under and subject to the laws providing for the sale of State lands, for the sum of $1,920, and among other terms and conditions of the sale that the purchaser had paid $192, leaving a balance due of $1728, payable in 18 annual installments with interest thereon at a stated rate payable annually; and that the purchaser may

pay any installment at any time if interest is paid thereon to the time of the next annual payment. It is conceded that no part of said balance had been paid when the land was assessed for taxation except the installment or installments that had become due. The cause was submitted upon the pleadings and an agreed statement of facts, the latter reciting with reference to the tax proceedings that the land was assessed for taxation as land, and in the same manner as all other lands in the same vicinity; that the assessment was in no respect an assessment of the interest or equity of the purchaser; and that the tax is a tax on the land as land, and not a tax on the interest or equity of the plaintiff in the land. The only question discussed by counsel and deemed by them to be presented for consideration upon the facts is whether the land as such was subject to taxation in 1912, or, stated generally, whether before the amount of the purchase price of State land has been paid in full, and the purchaser has thereby become entitled to a patent conveying the title to him, the land is taxable as land as the property of the owner of the certificate of purchase.

By the terms and conditions of the grant and the provisions of the constitution accepting it the State may dispose of its school lands only at public sale, and for not less than ten dollars per acre. (Act of Admission, Secs. 5, 11; Const. Art. XVIIII, Sec. 1). These restrictions as to price and manner of sale are recognized by the statute authorizing and regulating the sale of school and other State lands by providing that said lands shall be sold only at public auction to the highest responsible bidder at not less than three fourths of the appraised value, and not less than ten dollars per acre, except that a preference right to purchase a certain quantity of land at its appraised valuation is given to an actual and *bona fide* settler thereon at the time of the adoption of the Constitution; the statute following the Constitution in that respect. But the statute provides as to terms of payment, that not less than ten per cent of the purchase price shall be paid in cash on the day of the sale, and the balance

in not to exceed eighteen equal annual payments with interest thereon at the rate of four per cent per annum and six per cent per annum on all amounts not paid when due; that interest on all deferred payments shall be paid annually; and that the purchaser may pay in full at the time of sale, or may pay any annual installment at any time if interest is paid on the same to the time of the next annual payment. (Comp. Stat. 1910, Sec. 634, as amended by Ch. 25, Laws of 1911). The other material provisions of the statute relating to such sales are substantially as follows: When any State land shall have been purchased according to law, the board shall make and deliver to the purchaser a certificate of purchase containing the name of the purchaser, a description of the land, the sum paid, the sum remaining unpaid, the amount of annual payments including the accrued interest, and the date on which each deferred payment falls due; such certificate to be signed by the Governor and countersigned by the Commissioner of Public Lands. (Comp. Stat. 1910, Sec. 637). Whenever the purchaser, or his assign, has complied with all the conditions of the law providing for the sale, and has paid all the purchase money, together with the lawful interest thereon, he shall receive a patent for the land purchased; such patent shall run in the name of the State, and shall be signed by the Governor, countersigned by the Commissioner of Public Lands, and attested by the seal of the proper land board, and shall convey a good and sufficient title to the person therein named in fee simple. (Id. Sec. 638). Whenever any purchaser shall fail to make any of the payments stipulated in the certificate of purchase, and the same remains unpaid for one year after the time when it should have been paid, "the board may sell such land again. In case of such sale, all previous payments made on account of such land shall be forfeited to the State; such land shall revert to the State, and the title thereto shall be in the State as if no sale thereof had ever been made." (Id. Sec. 639). The board may require of each

purchaser of State lands .a bond, upon such conditions as the board may determine. (Id. Sec. 642).

It does not appear that any bond was required of the plaintiff as the purchaser of the land in question. The certificate of purchase, after reciting the terms of payment, states the conditions of the sale as follows:

"Now, therefore, the said Little Horse Creek Cattle Co., its successors or assigns will be entitled to a patent from the State of Wyoming to the land aforedescribed, upon the surernder of this Certificate of Purchase and fully complying with all the provisions of the statute in such case made and provided, and upon the payment of the said sum of One thousand, seven hundred twenty-eight dollars, the balance due, with interest thereon as above provided. Time is an essential element in the premises, and the purchaser herein agrees, in accepting this Certificate of Purchase, to make the payments as above specified, or, on failure so to do, to immediately vacate said premises; thereafter remaining in possession of said property shall be unlawful, and the occupier may be summarily ejected, and the right of possession shall revert to the State of Wyoming, and previous payments made on account of such land shall be forfeited to the State, and the title thereto shall be in the State, the same as if no sale had been made."

We have previously stated what counsel concede to be the only question presented upon the agreed facts, viz: whether State land sold as this land was sold is subject to taxation as land as the property of the purchaser, before the latter has become entitled to a patent for the land by paying the full amount of the purchase price. Counsel not only concede but insist that this eliminates any question as to the right to assess and tax the interest or equity of the purchaser in the land; and it was clearly intended by the agreed statement to show that the taxing authorities do not claim that this assessment and tax might be sustained in whole or in part as an assessment of or a tax upon the purchaser's interest or equity. While the statement that such

interest was not assessed or taxed seems to involve a con-
clusion as to the legal effect of the assessment we are not
disposed to dispute its correctness, since there is no other
showing as to the form and manner of listing the property.
And, in view of the statutory provisions regulating the
assessment of property for taxation, which proceed, as was
said in Hecht v. Boughton, 2 Wyo. 385, "wholly upon the
idea that property shall be listed to the owner," and re-
quire that real property shall be assessed at its true value
in money at private sale, the general language of the state-
ment certainly permits the inference that the land itself was
assessed by its proper description at its true value as land,
and not otherwise, and that the intent and purpose of the
assessment was to assess the entire interest which would
ordinarily be covered and bound by an assessment of land
to the owner; that is to say, the full ownership—the fee
or what is equivalent to it. (See Colorado Company v.
Commissioners, 95 U. S. 259, 265, 24 L. Ed. 495; Wright
v. Cradlebaugh, 3 Nev. 341).

The objection to the tax is based upon the provision of
the constitution declaring that the property of the State
shall be exempt from taxation, it being contended that the
land in question is property of the State within the meaning
of that provision. The section of the Constitution declar-
ing the exemption reads as follows: "The property of the
United States, the State, counties, cities, towns, school dis-
tricts, municipal corporations and public libraries, lots with
the buildings thereon used exclusively for religious wor-
ship, church parsonages, public cemeteries, shall be exempt
from taxation, and such other property as the Legislature
may by general law provide. (Art. XV, Sec. 12). It is
contended in support of the assessment and tax that the
State retains the legal title merely as security for the de-
ferred payments, and that for the purpose of taxation the
property belongs to the purchaser, citing Courtney v. Mis-
soula County, 21 Mont. 591, 55 Pac. 359, and Edgington v.
Cook, 32 Neb. 551, 49 N. W. 369, and citing also cases to

the effect that a vendee in possession of land under a con-
tract of purchase is liable for the taxes, although the legal
title remains in the vendor until the purchase price shall be .
fully paid.   For reasons which will be explained before
closing the discussion we think the cases thus cited are
clearly to be distinguished from the case at bar, with the
exception of Edgington v. Cook.  That case was decided in
Nebraska in 1891 and held, contrary to the well established
rule on the subject, that land purchased from the United
States was taxable as the property of the purchaser, while
the government held the legal title, and part of the pur-
chase price remained unpaid, and before the purchaser had
become entitled to a patent.  But the case was overruled in
1894 by the case of Graff v. Ackerman, 38 Neb. 720, 57
N. W. 512, involving precisely the same question, wherein
the court not only concluded that until the purchase price
was paid in full the land was not taxable, but said that hav-
ing so concluded "the case of Edgington v. Cook cannot
longer be accepted as authority."

The cases cited upon the general proposition that a ven-
dee in possession must pay the taxes, although the vendor
is not bound to convey until the payment of the purchase
price, are cases determining such liability as between the
vendor and vendee, where the property would be subject to
taxation whether regarded as the property of either party;
and that may be a proper rule in the absence of a provis-
ion in the contract or statute to the contrary.  As suggested,
such rule assumes that the property is subject to taxation;
and it may not be important whether it is assessed to the
vendor or vendee, though that matter usually depends upon
the statute.  (See 1 Cooley on Taxation (3rd Ed.) 721, 726-
731, 739).  Without stopping to inquire whether under our
statutes the property could properly be assessed to the ven-
dee, or whether the rule holding the vendee liable for the
taxes would be applicable at all, it cannot properly be ap-
plied so as to allow the taxation of property or an interest
in property declared to be exempt by constitutional provis-

ion, or by some principle putting it beyond the power of the Legislature to authorize its taxation. (Mass. Gen. Hospital v. Boston, 212 Mass. 20, 98 N. E. 583). And it is at least doubtful whether the rule would apply upon the facts in this case as to the terms and conditions of the contract.

So far as the rule making the vendee liable for the taxes rests upon judicial decision it results from the application of the doctrine of equitable conversion respecting contracts for the sale of land prior to the conveyance of the legal title, whereby, in equity, the vendee is treated as the beneficial or equitable owner of the land, and the vendor as the owner of the purchase-money, and the vendor becomes, as to the land, a trustee for the vendee, subject to the performance of the latter's obligations, and the vendee, as to the purchase money, a trustee for the vendor, who has a charge or lien on the land or the equitable estate of the vendee therefor. This rule, for many purposes, determines in equity the rights of the parties and others who have succeeded to the interest of either party by transfer or otherwise; and the rule is itself but the consequence of the familiar doctrine of courts of equity that for many purposes things agreed to be done are treated as if they were actually done, and necessarily refers to a valid contract,— one binding upon both parties, containing not only an obligation on the part of the vendor to convey upon payment of the purchase price, but an obligation on the part of the vendee to purchase and pay the purchase-money, and has no reference to a mere option to purchase or to complete the purchase. (3 Pomeroy's Eq. Juris. (3rd Ed.) Secs. 1260, 1261 and note; Lysaght v. Edwards, 2 L. R. Ch. Div. 499; Milwaukee v. Milwaukee County, 95 Wis. 424, 69 N. W. 796; People v. Shearer, 30 Cal. 645, 648). It is evident that if the purchaser is not obligated to pay the purchase-money, the vendor cannot be treated even in equity as the owner of the money, and therefore, in such case, there would be no ground for applying the doctrine of equitable conversion. In Milwaukee v. Milwaukee County, *supra,* it

appeared that, without incurring any corporate liability, the
City of Milwaukee was entitled under a contract to the
possession of certain lands upon making the first payment
provided for in the contract, and would be entitled to a
conveyance upon paying the balance of the purchase price
within a specified period, and the question was whether the
lands were exempt from taxation under a statute declaring
all property owned exclusively by any city to be exempt, or
another statute providing that the city may lease, purchase
and hold real or personal estate sufficient for the conveni-
ence of the inhabitants thereof free from taxation.    It was
held that the principle, that the vendee in possession under
a contract of purchase binding him to pay the purchase
money is the equitable owner, and, in the absence of ex-
press agreement, must pay the taxes, had no application,
and the court said: "The city may choose to acquire the
title by paying the sums named in the contract, or it may
choose to cease paying, and forfeit its option.    It now has
possession under an option, but has no lease, and certainly
has no title, much less an exclusive title."

It is not clear that our statutes require a purchaser of
State lands to bind himself to complete the purchase by
making the payments provided for.    The certificate of pur-
chase provides that the purchaser agrees, in accepting the
certificate, "to make the payments as above specified, or, on
failing so to do, to immediately vacate said premises."    A
provision like the one quoted in a certificate of purchase
under a similar statute in Colorado, in connection with a
bond which had been given by the purchaser conditioned
for the payment of the purchase price at the times and in
the manner provided in the certificate of purchase, was
construed in that state, and it was held that such condition
of the bond would be satisfied by a prompt vacating of the
premises.    (People v. Clough, 16 Colo. App. 120, 63 Pac.
1066).

But under the rule in equity aforesaid defining the posi-
tion of the parties to a contract for the sale of land, while

the vendee is spoken of as the equitable owner of the land, and the vendor as the owner of the purchase-money, and trustee of the land or the title for the purchaser, the vendee does not have the complete equitable title, for he is trustee of the purchase-money, and his estate is subject to the equitable interest of the vendor usually referred to as a charge or lien upon the property for the unpaid purchase-money. And he does not acquire a complete equitable title until upon paying the purchase-money and complying with the other conditions precedent he has become entitled to a conveyance. (15 Cyc. 1087; Diver v. Friedheim, 43 Ark. 203; Dorn v. Baker, 96 Cal. 206, 31 Pac. 37; U. S. v. Milwaukee, 100 Fed. 828; Ry. Co. v. McShane, 22 Wall. 444, 22 L. Ed. 747; Sargent v. Herrick, 221 U. S. 404, 31 Sup. Ct. 574, 55 L. Ed. 787; Thygerson v. Whitebeck, 5 Utah, 406, 16 Pac. 403; Joy v. Midland State Bank, 28 S. D. 262, 133 N. W. 276; McCaslin v. State, 44 Ind. 151, 175). Nor is the vendor prior to the full payment of the purchase price a *mere* trustee. He is such trustee subject to the performance of the vendee's obligations, and until those obligations are performed the vendor not only holds the legal title but has a substantial interest in the property. In Pomeroy's Equity Jurisprudence, (3rd Ed.) in Section 1260 it is said to be a misnomer to call the vendor's title a lien; that he has no need of a lien, since his legal title is a more efficient security. And in Section 1261 it is said: "The so-called lien of the vendor is only another mode of expressing his equitable interest thus arising from the doctrine of conversion; and so far as it has any distinctive signification, it simply means his right to enforce his claim for the purchase-money against or out of the vendee's equitable estate by means of a suit in equity."

It was said by Lord Cairns in a leading English case on this subject, explaining the position of the parties to a contract of sale: "The vendor was a trustee of the property for the purchaser; the purchaser was the real beneficial owner in the eye of a court of equity of the property, sub-

ject only to this observation, that the vendor, whom I have called the trustee, was not a mere dormant trustee, he was a trustee having a personal and substantial interest in the property, a right to protect that interest, and an active right to assert that interest, if anything should be done in derogation of it. The relation, therefore, of trustee and *cestui que trust* subsisted, but subsisted subject to the paramount right of the vendor and trustee to protect his own interest as vendor of the property." (Shaw v. Foster, L. R. 5 H. L. 321, 27 L. T. Rep. (N. S.) 281, 283). In the earlier case of Wall v. Bright, 1 Jacob & Walker, 494, 37 Eng. Reprint, 456, it was said: "The vendor is, therefore, not a mere trustee; he is in progress towards it, and finally becomes such when the money is paid, and when he is bound to convey. In the meantime he is not bound to convey; there are many uncertain events to happen before it will be known whether he will ever have to convey, and he retains for certain purposes, his old dominion over the estate." The learned judge had previously explained some of the distinctions between a mere trustee and one made a trustee constructively by entering into a contract to sell, as follows: "A mere trustee is a person who not only has no beneficial ownership in the property, but never had any; and could therefore, never have contemplated a disposition of it as of his own. In that respect he does not resemble one who has agreed to sell his estate, that up to the time of the contract was his. There is this difference at the outset, that the one never had more than the legal estate, while the other was at one time both the legal and beneficial owner, and may again become the beneficial owner, if anything should happen to prevent the execution of the contract; and in the interim between the contract and conveyance, it is possible that much may happen to prevent it. Before it is known whether the agreement will be performed, he is not even in the situation of a constructive trustee; he is only a trustee *sub modo,* and provided nothing happens to prevent it. * * * * * * The agreement is not for all purposes

considered to be completed. Thus, the purchaser is not en-
titled to possession, unless stipulated for; and if he should
take possession, it would be a waiver of any objection to the
title; the vendor has a right to retain the estate in the mean-
time, liable to account if the purchase is completed, but not·
otherwise. Till then it is uncertain whether he may not
again become sole owner; the ownership of the purchaser
is inchoate and imperfect; it is in the way to pass, but it has
not yet passed." When the purchase price has been paid,
the vendor is then a mere trustee of the legal title, but
where there has been only part payment he is a trustee to
the extent of the money paid. (Rose v. Watson, 10 H. L.
Cas. 678, 10 L. T. Rep. (N. S.) 106; 1 Perry on Trusts,
(6th Ed.) Sec. 231; Winslow v. Crowell, 32 Wis. 639; U.
S. v. Milwaukee, (C. C.) 100 Fed. 828).

Therefore, if the State occupies no better position than
that of a vendor under an ordinary contract of sale, it has
an interest in the land, and that interest clearly is property
within the meaning of the provision of the constitution ex-
empting the property of the State from taxation, and the
exemption certainly prevents the taxation of the land in
such a manner as to include or imperil that interest. In
some of the states provision seems to be made for taxing
state lands in a manner intended to avoid a conflict with a
constitutional provision exempting state property from tax
ation; such provisions usually protect the interest of the
State either by authorizing merely the interest of the pur-
chaser to be assessed and taxed and stating a rule for its
valuation, or requiring the lands to be assessed to the pur-
chaser the same as other lands, but declaring that for non-
payment the interest of the purchaser only shall be sold, and
reserving to the State all its rights under the contract of
sale. Statutes not so clear in other States have been con-
strued as having the same effect; and it has come to our
notice that in at least one State lands conditionally sold by
the State are, by statute, expressly exempted from taxation
until the price is fully paid. Our statutes contain no pro-

vision expressly referring to the matter of taxing State lands after a conditional sale and while the purchase price remains unpaid, nor does the revenue law make any distinction respecting the title or interest to be sold or conveyed upon a sale of land for delinquent taxes, but seems to provide for a sale of the fee in all cases, subject only to the rights of redemption provided by law. And the certificate of purchase makes no provision for the payment of taxes. In these respects, as well as in respect of the right of the purchaser to a patent only upon complying with all the conditions of the purchase, the situation is analogous to that of lands disposed of by the United States under the public land laws, or sold or granted under an Act of Congress requiring the payment of the purchase price or the compliance with certain conditions before the issuance of a patent.

Under the familiar doctrine that the property of the United States situated within the limits of a State is exempt from State taxation, it is conclusively settled that the exemption continues until the grantee or purchaser becomes entitled to a patent through the performance of all the conditions upon which the issuance of a patent is made to depend, but when such conditions have been fully performed, so that the government holds nothing but the naked legal title, the exemption ceases, and the property may then be taxed to the person who has acquired the complete equitable title. (Wisconsin Cent. R. R. Co. v. Price County, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687; Railway Co. v. Prescott, 16 Wall. 603, 21 L. Ed. 373; Ry. Co. v. McShane, 22 Wall. 444, 22 L. Ed. 747; Colorado Co. v. Commissioners, 95 U. S. 259, 24 L. Ed. 495; Van Brocklin v. Tennessee, 117 U. S. 151, 6 Sup. Ct. 670, 29 L. Ed. 845; Sargent v. Herrick, 221 U. S. 404, 31 Sup. Ct. 574, 55 L. Ed. 787; U. S. v. Southern Oregon Co., (C. C.) 196 Fed. 423; Young v. Charnquist, 114 Ia. 116, 86 N. W. 205; Copp v. State, 69 W. Va. 439, 71 S. E. 580, 35 L. R. A. (N. S.) 669; Mint Realty Co. v. Philadelphia, 218 Pa. St. 104, 66

Atl. 1130, 11 Ann. Cas. 388; Mariner v. Oconto Land Co., 142 Wis. 531, 126 N. W. 34; People v. Shearer, 30 Cal. 645; Cent. Pac. R. R. Co. v. Howard, 52 Cal. 227; Ivinson v. Hance, 1 Wyo. 270; Board of Comm'rs. v. Shaffner, 12 Wyo. 177, 74 Pac. 88, 109 Am. St. Rep. 971). The principle that lands sold by the United States may be taxed before the legal title has been parted with by issuing a patent "is to be understood" as said in Ry. Co. v. Prescott, *supra,* "as applicable to cases where the *right* to the patent is complete, and the equitable title is fully vested in the party without anything more to be paid, or any act to be done going to the foundation of his right." And in the recent case of Sargent v. Herrick, *supra,* it was said by Mr. Justice Van Devanter, speaking for the court, considering the right to tax land claimed to have been located with a military bounty land warrant: "As the State was without power to tax the land until the equitable title passed from the United States, and as that title did not pass until there was a full compliance with all the conditions upon which the right to a patent depended (Wisconsin Cent. R. R. Co. v. Price Co., 133 U. S. 496, 505, 10 Sup. Ct. 341, 33 L. Ed. 687), it is apparent that the validity of the tax title depends upon the question whether the location of the warrant, without more, gave a right to a patent." The principle applies not only to the disposal of lands under the public land laws but to the sale of lands or other property of the United States on credit, where, until full payment of the purchase price, the purchaser does not become entitled to a patent conveying the legal title. (U. S. v. Milwaukee, (C. C.) 100 Fed. 828; Copp v. State, *supra;* Mint Realty Co. v. Philadelphia, *supra;* Logan v. Board of Commissioners, 51 Kan. 747, 33 Pac. 603).

The case of United States v. Milwaukee involved the right to levy city and county taxes upon premises on which the building occupied by the Federal offices was located; the said premises and building having been disposed of under a contract pursuant to an Act of Congress providing

that the purchase price should be paid—one-fourth on January 1, 1892, and the balance in three equal annual payments, with 6 per cent. interest per annum, and that the premises should be conveyed by a quit claim deed when the purchase-money should be fully paid. In holding the property exempt from taxation while part of the purchase price remained unpaid the court said: "It may be that the purchaser may not complete his payments, in which case the title will remain in the United States of America. And so long as the government has a monetary interest in the property, retaining the legal title, the property is the property of the United States, so far as the question of taxation is concerned. It is true, the government holds the title in trust for the purchaser, so far as he has made payments; but that is liable to be extinguished by forfeiture for non-payment of the remainder, and until the purchase price of the property has been fully paid, and the whole equitable interest in the property vested in the purchaser, and nothing remains but for the United States to issue its patent pursuant to the agreement, in the judgment of the court that property is not subject to State taxation."

A like question was presented in Copp v. State, *supra*. We quote a few extracts from the opinion which are quite in point: "By the terms of sale the government retains title until all the purchase-money is paid, and upon payment in full, is to make a quit claim deed to the purchasers. * * * * * * * Has the United States government such an interest in the property as entitles it to be exempt from taxation by the State for the year 1909? It has the legal title and a vendor's lien for three-fourths of the purchase price. None of the deferred payments were due when the taxes for that year were assessed. Do these facts not show that the government has such an interest in, or claim upon, the property as will exempt it from State taxes? * * * * * * * * It is insisted by counsel for plaintiffs in error that the government has parted with its interest in the property, that it is simply the holder of the

legal title, and the purchasers are the equitable owners. It is true they are the purchasers and have an equitable right in the property, and under the terms of their contract are at present occupying it and receiving the rents and profits. But, notwithstanding, must they not be complete equitable owners; that is, must they not have paid all the purchase-money, and must they not be in a position to demand of the government a deed for the land, before they can be regarded, in law, as such equitable owners as will make the property liable for taxes? From a careful consideration of the following decisions such seems to be the requirement of the law. * * * * * In view of these decisions we are bound to hold that the land purchased of the United States by C. H. Copp and his associates is not liable for State, county, or district taxes, so long as the United States has any claim upon it for any portion of the purchase-money. If it were subject to taxation, it would also be liable under our statute law to be sold for their non-payment, and in such case, if not redeemed, complete title to the entire interest in the land would pass to the tax purchaser. Under the West Virginia statute, it is not alone the interest of Copp and his associates in the land that is taxed, but it is the entire interest and estate therein on which taxes are assessed, and to suffer it to be taxed, so long as any portion of the purchase price remains unpaid might operate as a serious embarrassment to the government in the enforcement of the claim for the purchase-money."

In Railway Co. v. McShane, *supra,* the court said in the opinion, that if the land could be sold for the taxes, "it must be valid if the land is subject to taxation, and the title would pass to the purchaser. If no such title could pass, then it is because the land is not liable to the tax; and the treasurers of the counties have no right to assess it for that purpose." And in Colorado Co. v. Commissioners, 95 U. S. 259, 265, 24 L. Ed. 495, where the right was questioned to assess and tax certain lands that had been granted to the heirs of one Nolan and confirmed by an Act of Congress,

which provided that the confirmation should not become
effective until the expense of the public surveys showing
the location of the lands had been paid by the grantees, it
was said by the court that the provision for the payment of
the expense of surveys suspended the vesting of title in the
claimants, or of any perfect right to the title until such ex-
pense was paid, and that a sale of the land under territorial
authority, if held to be a sale on a valid tax, "might very
seriously embarrass the assertion of the rights of the gov-
ernment in the premises. If the tax had been levied on the
equitable claim of these holders under Nolan, whatever that
is, the case might be different. But this case shows that it
is the land which is taxed, and the sale would convey the
title, or nothing." But the principle that the property of
the United States is not taxable by the authority of a State
until the complete equitable title has passed out of the gov-
ernment does not prevent the taxation of such possessory
rights as the purchaser may have. (Cent. Pac. R. R. Co.
v. Nevada, 162 U. S. 512, 16 Sup. Ct. 885, 40 L. Ed. 1057;
State v. C. P. R. R. Co., 21 Nev. 247, 30 Pac. 686; Maish
v. Arizona, 164 U. S. 599, 17 Sup. Ct. 193, 41 L. Ed. 567;
People v. Shearer, 30 Cal. 645; People v. Cohen, 31 Cal.
210). And the purchaser s improvements on the land may
be taxed. People v. Shearer, *supra*.

An Act of Congress providing for the sale of Indian re-
serve lands situated in the State of Kansas and that one-
fourth of the purchase price should be paid at the time of
the sale, and the remainder in three equal annual install-
ments with a stated rate of interest, expressly declared
that nothing in the act should be so construed as to prevent
the lands from being taxed under the laws of the State of
Kansas, as other lands are or may be taxed in that State,
from and after the time of the first payment; and it was
provided in a later act as to said lands that they should be
subject to taxation according to the laws of said State after
the first payment, but that no sale for taxes should operate
to deprive the United States of the lands or any part of

the purchase price, but that if default be made in any installment of the purchase price, the tax-sale purchaser might pay so much of the purchase price as remained unpaid, and thereupon become entitled to receive a patent for the same as though he had made due settlement thereon. By reason of such consent of Congress, it was held by the Supreme Court of Kansas in Logan v. Board of Commissioners, 51 Kan. 747, 33 Pac. 603, that the lands might be taxed before final payment of the purchase price, but it was said in the opinion: "It must be conceded that, if Congress had not expressly provided that the lands referred to 'shall be (after the first payment is made thereon) subject to taxation according to the laws of the State of Kansas, as other lands are or may be taxed in said State,' the lands in dispute would not be taxable under any of the provisions of the tax laws."

The Constitution of this State declaring without qualification that the property of the State shall be exempt from taxation, and it being admitted in this case that the interest of the plaintiff, as the owner of the certificate of purchase, was not assessed or taxed, but that the land was assessed and taxed as land, and as other lands are taxed, the doctrine aforesaid of the cases involving the right of the State to tax property of the United States is clearly applicable. (Corcoran v. City of Boston, 185 Mass. 325, 70 N. E. 197; Corcoran v. City of Boston, 193 Mass. 586, 79 N. E. 829; DeMoines N. & R. Co. v. Polk County, 10 Ia. 1; Denniston v. Unknown Owners, 29 Wis. 351; Hardy v. Hartman, 65 Miss. 504, 4 So. 545; Witt v. Armstrong, (Ark.) 6 S. W. 225; Zumstein v. Consolidated Coal & Min. Co., 54 O. St. 264, 43 N. E. 329; Webster v. Board of Regents, 163 Cal. 705, 126 Pac. 974; McCaslin v. State, 99 Ind. 428; Willey v. Koons, 49 Ind. 272; Henderson v. State, 53 Ind. 60; and see note to Copp v. State, 35 L. R. A. (N. S.) 669, 674). There can be no doubt that the payment of the purchase-money as required by statute and the certificate of purchase is a condition precedent to the acquirement by

the purchaser of a complete equitable title or a right to a patent conveying the legal title.

The case of Courtney v. Missoula County, 21 Mont. 591, 55 Pac. 359, is cited and much relied on by defendant, plaintiff in error here, particularly a statement in the opinion to the effect that the purchaser having entered into a valid contract to pay the consideration agreed upon, and to accept title to the land, which the State, on its part, is bound to convey, and having taken possession and made partial payments, is the owner for the purpose of taxation. It appears by the opinion in that case that under the statutes of Montana the purchaser of State lands is required to give a bond conditioned for the payment of the residue of the purchase-money, and in case of default the land board is authorized to sue upon the bond, or again sell the land for the sum due; and if upon such sale the sum due for principal and interest should not be paid, the board is authorized to purchase the land for the State at the amount due, with costs of sale. It appears also by the opinion that the statute regulating the sale of State lands contained a provision as follows: "Any lands sold, for five years after the sale thereof, must not be assessed at any higher valuation than the estimate upon which they are sold, unless improvements within that time have been made thereon, in which case the value of the improvements must be added to the estimate;" and that another provision of the statutes required the state land agent, on or before a stated date in each year, to make out and transmit to each county assessor certified lists of lands lying in his county which had been sold by the State, for which certificates of purchase, patents, or deeds had been issued during the preceding year; and that the revenue statutes of Montana define "property" as including "real estate" and define "real estate" as including the possession of, claim to, ownership of, or right to the possession of, land. It is at least doubtful whether the purchaser under our laws and by the certificate or purchase has so agreed to pay the purchase price as to

incur a personal liability, therefor. But however that may be, we have no statutory provisions like those in Montana above referred to. The land board under our statute is not required to sell the land for the sum due, but is authorized in case of default in any installment of the purchase price for the period mentioned in the statute to "sell such land agian", which we understand to mean in connection with the other language of the various sections relating to the sale of State lands, that the land becomes subject to another sale to be conducted under the same limitations and regulations as if it had not previously been sold. It is to be a new sale, and not a sale for the purpose of collecting the amount due from the original purchaser; and we do not understand that any duty would rest upon the land board or the State to refund to the original purchaser the excess, if any, of the proceeds of the new sale above the amount that remains unpaid under the original certificate. The court in the case cited refers to the overruled Nebraska case of Edgington v. Cook, *supra,* as the principal authority for the conclusion reached, and as authority for the statement that the purchaser was the owner for the purpose of taxation. We are not disposed, however, to question the correctness of the decision in the Montana case under the statutes of that State, for we think it reasonably clear that the tax was sustained as a tax merely upon the interest or equity of the purchaser. Concluding the opinion the court say: "Under our constitutional and statutory provisions, the property of the State may not be taxed. The interest of the State in the land, anterior to payment of the full purchase price, is its property, and that interest in no wise has been affected by the assessment."

In the State of Washington the constitution exempts the property of the State from taxation, but by statute a contract for the sale of State lands is required to provide for the payment of all taxes and assessments against the land and that if the taxes are not paid the contract may be forfeited. It is also provided by statute that property held

under contract for the purchase thereof belonging to the State shall be considered for all purposes of taxation as the property of the person holding the same. Construing these statutory provisions it was held that they were not intended to tax the land, as such, while the ownership was in the State, "because that is forbidden by the constitution", but that the provisions were fairly to be understood as intending to charge only the interest of the contractor in the land, and that the procedure was against the land for the purpose only of fixing the amount of the assessment. That construction of the statute was said to be in harmony with the constitutional provision exempting State property from taxation, and the obligations of the federal trust as to the price to be received for school lands, and would accomplish the purpose intended by the Legislature. (State v. Frost, 25 Wash. 134, 64 Pac. 902).

In Nebraska the property of the State, including school lands, was declared by statute to be exempt from taxation, but there does not seem to have been any constitutional provision to that effect. It was further provided by the statute that "all other property", (not declared exempt in the preceding section) "real and personal, within this State, is subject to taxation; and this section is intended to embrace lands and lots in towns, including lands bought from, or donated by, the United States, and from this State, whether bought on credit or otherwise." Under this provision of the statute it was held in Hagenbuck v. Reed, 3 Neb. 17, that State school lands in possession of a purchaser were subject to taxation, although the State retained the legal title and the purchase price had not been paid. It appears that the decision was much questioned in that State, resulting in the passage of an act by the Legislature declaring that the school lands held under contract of sale from the State, the title being in the State, were not taxable and had not been taxable for any purpose whatever, and providing for refunding all taxes that had been paid on such land. That act was held to be valid in Washington

County v. Fletcher, 12 Neb. 356, 11 N. W. 460, 542, 855. And in Graff v. Ackerman, 38 Neb. 720, 57 N. W. 512, which has been referred to as overruling the case of Edgington v. Cook, it was said that the force of Hagenbuck v. Reed as authority had been greatly impaired, if it had not been overruled, by subsequent decisions, citing Washington County v. Fletcher.

A provision in our revenue law somewhat similar to the one construed in the Nebraska case of Hagenbuck v. Reed, *supra,* was considered by the Supreme Court of the Territory in 1875 in the case of Ivinson v. Hance, 1 Wyo. 270. The statute did not then, and does not now, specifically refer to lands bought from the State, in that respect differing from the Nebraska statute, but immediately following the provision that the section "is intended to embrace lands and lots in towns, including lands bought from the United States, whether bought on credit or otherwise", it was provided that "buildings or improvements erected upon lands the title to which remains in the United States, or in any incorporated company" shall be subject to taxation. It was held not only that the Territory was without power to tax land the title to which is in the United States, but, referring to the statutory provision aforesaid, that the Legislature had taken the same view of the question. The decision clearly construed the provision as not authorizing the taxation of lands bought from the United States on credit, before the purchaser had become entitled to a patent. The same construction was placed upon a somewhat similar statute in Oklahoma. (Topeka Com. Secur. Co. v. McPherson, 7 Okl. 220, 54 Pac. 489).

There are several decisions in Kansas holding State lands subject to taxation while the purchase price remains unpaid and before the conveyance of the legal title, but in that State the constitution did not exempt from taxation all the property of the State, but only all property used *exclusively* for State purposes; and it was said that the land held under certificate of purchase was not used exclusively for

State purposes. Again, in the statute providing for the sale of school lands it was provided that land purchased under the statute shall be subject to taxation as other lands, and in case of non-payment of the taxes the land may be sold as in other cases, but that the purchaser at the sale shall be subject to all the conditions of the bond of the original maker, and of the certificate of purchase. (Oswalt v. Hallowell, 15 Kan. 154; Prescott v. Beebe, 17 Kan. 320). Thus the State was protected, and, in effect, the purchaser's interest only was taxed though assessed by describing the land.

The case of Wells v. Mayor & Aldermen of Savannah, 87 Ga. 397, 13 S. E. 442, has been often cited and quoted from as authority upon the proposition that a vendee under a contract of sale is liable for the taxes, and it has been supposed to sustain a right of taxation as to public property such as is claimed in this case. But in that case the contract granted the right of possession *forever,* subject only to the payment of ground rent annually, and the case was decided upon the principle that one who owns the use forever, though it be on a condition subsequent, is the true owner for the time being. The question in the case was not one of constitutional or statutory exemption of city property, but involved the construction of a contract provision for the payment of the taxes by the lessee or purchaser, and a certain ordinance which it was claimed exempted the lands from taxation while held by the lessee. (See Wells v. Savannah, 181 U. S. 531, 21 Sup. Ct. 697, 45 L. Ed. 986). The case is not in conflict with our conclusion in the case at bar.

If this land in which the State retains a substantial interest may be sold for taxes then it must be for the reason that it was lawfully taxed; and in that event the condition as to price in the act granting the lands might indirectly be violated. It may be that the plaintiff would have no right to object to the assessment and tax upon that ground, but certainly the plaintiff may object to the sale of the land which

might dispose of its interest in it, on the ground that the land which was assessed and valued as such was illegally assessed as his property. We think the threatened sale was properly enjoined and the judgment will be affirmed.

SCOTT, C. J., and BEARD, J., concur.